DAVID SHONKA
Acting General Counsel
R. MICHAEL WALLER
MEGAN E. GRAY
Attorneys
Federal Trade Commission
600 Pennsylvania Avenue NW
Mailstop M-8102B
Washington, D.C. 20580
Phone:  (202) 326-2902 (Waller)
Phone:  (202) 326-3408 (Gray)
Facsimile:  (202) 326-2558
Email:  rwaller@ftc.gov, mgray@ftc.gov

DANIEL G. BOGDEN
United States Attorney
District of Nevada
BLAINE T. WELSH
Assistant United States Attorney
Nevada Bar No. 4790
333 Las Vegas Blvd. South, Suite 5000
Las Vegas, Nevada 89101
Phone:  (702) 388-6336
Facsimile:  (702) 388-6787

*Attorneys for Plaintiff the Federal Trade Commission*

UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA

| | |
|---|---|
| **Federal Trade Commission,** | Case No.:  2:13-cv-00143-MMD-GWF |
| Plaintiff, | |
| v. | **[Proposed] Preliminary Injunction with Other Equitable Relief  Against Jared Mosher** |
| **Ideal Financial Solutions, Inc., et al.,** | |
| Defendants. | |

Plaintiff Federal Trade Commission ("the Commission" or "the FTC"), pursuant to

Section 13(b) of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. § 53(b), filed an

Amended Complaint for a Permanent Injunction and Other Equitable Relief against Jared

Mosher, including consumer redress, and has moved for a Preliminary Injunction pursuant to

Rule 65 of the Federal Rules of Civil Procedure.  *See* Docket Entries ("D.E.") __ & __.  After reviewing the Commission's filings and exhibits, the Court enters the Preliminary Injunction and Other Equitable Relief against Jared Mosher (the "Order").

## I.  FINDINGS OF FACT

The Court, having considered the Amended Complaint, the Commission's Motion for a Preliminary Injunction against Jared Mosher, declarations and exhibits, including supplemental declarations, the FTC's Memorandum in Support of Its Motion for a Preliminary Injunction against Jared Mosher ("Mosher PI Memo"), and being otherwise advised, finds as follows:

1.      This Court has jurisdiction over the subject matter of this case, and there is good cause to believe it will have jurisdiction over all parties hereto.

2.      Venue is properly with this Court.

3.      There is good cause to believe that Defendants Ideal Financial Solutions, Inc.; Ascot Crossing, LLC; Chandon Group, Inc.; Bracknell Shore, Ltd.; Fiscal Fitness, LLC; Avanix, LLC; Steven Sunyich; Christopher Sunyich; Michael Sunyich; Shawn Sunyich; Melissa Sunyich Gardner; Kent Brown; and Jared Mosher (collectively, "Defendants") have engaged in and are likely to engage in acts and practices that violate Section 5(a) of the FTC Act.

4.      Section 13(b) of the FTC Act allows a district court to grant the Commission a Preliminary Injunction "[u]pon a proper showing that, weighing the equities and considering the Commission's likelihood of ultimate success, such action would be in the public interest."  15 U.S.C. § 53(b).  Section 13(b), therefore, "places a lighter burden on the Commission than that imposed on private litigants by the traditional equity standard; the Commission need not show irreparable harm to obtain a preliminary injunction."  *FTC v. Warner Communications, Inc.,* 742 F.2d 1156, 1159 (9th Cir. 1984).  Under this more lenient standard, "a court must (1) determine

1    the likelihood that the Commission will ultimately succeed on the merits and (2) balance the

2    equities." *Id.* at 1160.

3         5.    There is good cause to believe that the Commission is likely to prevail on the merits

4    of this action.  The evidence set forth in the Mosher PI Memo, and the accompanying

5    declarations and exhibits, demonstrates that Jared Mosher ("Mosher") has likely engaged in

6    unfair and deceptive acts or practices in violation of Section 5 of the FTC Act.  The evidence

7    demonstrates that Mosher along with the other Defendants participated in and controlled a

8    common enterprise that acquired consumers' bank account or credit card information and debited

9    those consumers' bank accounts or billed their credit cards, without such consumers'

10   authorization.

11        6.    Section 5 defines an unfair practice as an act or practice that "causes or is likely to

12   cause substantial injury to consumers which is not reasonably avoidable by consumers

13   themselves and not outweighed by countervailing benefits to consumers or to competition."  15

14   U.S.C. § 45(n).

15        7.    As the Court found in its February 15, 2013 Preliminary Injunction with Other

16   Equitable Relief ("February 15th PI"), the Commission is likely to demonstrate that the

17   Defendants' unauthorized debiting of consumers' bank accounts and unauthorized billing of their

18   credit cards constitutes an unfair trade practice.  *See* D.E. 18.  First, the Commission has

19   demonstrated that Defendants' actions have likely caused substantial injury to consumers.

20   Although the Commission alleges that consumers were unlawfully charged approximately $30,

21   substantial injury in this context can include such small harms to large amounts of consumers.

22   *See FTC* v. *Pantron I Corp.,* 33 F.3d 1088, 1102 (9th Cir. 1994) ("Both the Commission and the

23   courts have recognized that consumer injury is substantial when it is the aggregate of many small

individual injuries."); *FTC v. Inc21.com Corp.,* 745 F. Supp. 2d 975, 1004 (N.D. Cal. 2010). The Commission approximates Defendants to have unlawfully billed at least $24 million from consumers.  Second, such harm was not avoidable by consumers, since the Commission alleges that consumers had not purchased any product from Defendants and had no reason to inquire into their bills.  *Id.* (finding that purchases of products could not be reasonably avoided when consumers did not authorize or know about the purchases); *FTC* v. *J.K. Publ'ns., Inc.,* 99 F. Supp. 2d 1176, 1203 (C.D. Cal. 2000) (noting that unauthorized billing is an unfair trade practice).  Lastly, consumers appear not to have received any countervailing benefit for these charges.  The evidence in the record demonstrates that the high percentage of "returns" (money refunded from unauthorized debiting of checking account) and "chargebacks" (money refunded from unauthorized charging of credit cards), as well as the dedicated call centers operated by Defendants only to staff consumer complaints about the charges, demonstrates that consumers received no benefit from the transactions.

8. In addition to the unauthorized transactions, the record demonstrates that Defendants likely engaged in unfair or deceptive trade practices by misrepresenting to consumers who inquired about the unauthorized charges that the consumers did in fact agree to purchase Defendants' "products."  *See* D.E. 18.  The products were billed as financial consulting services relating to payday loans, or insurance policies that protected against defaults of payday loans, or similar phony services connected to payday loans that consumers had applied for.  With regards to the latter, a former call center employee of Defendant Ideal Financial testified that he would provide the financial program consultation service if a consumer requested it from the calls, but this would rarely happen.  (See dkt. no. 3-3, Exh. 23, Decl. of Jeffrey Russell Stevens.) However, the high number of callers who would request reversals of the unauthorized transaction

-4-

or who would call the number associated with the charge on their bill suggests that these consumers did not know about the service, did not intend to receive a benefit, or did not actually receive any benefit.  The evidence raises a serious question as to whether any sizeable number of consumers actually signed up for and received Defendants' financial services in exchange for the charges.  Consequently, Defendants' statements to consumers that they authorized such charges constitute misrepresentations that are likely to mislead consumers to believe that their payday loan inquiries resulted in purchases of Defendants' products.

9.     The Commission is also likely to demonstrate that Mosher, like the other individual Defendants, is liable for injunctive as well as compensatory relief.  Individual defendants are liable for violation of the FTC Act and subject to injunctive relief if they participated in the violations or had the authority to control them.  *See FTC v. Publ'g Clearing House, Inc.*, 104 F.3d 1168, 1170 (9th Cir. 1997 (defendant's role of president and authority to sign documents on behalf of the corporation "demonstrate that she had the requisite control" to be held individually liable).  An individual's status as a corporate officer gives rise to a presumption of control in a small, closely held company.  *Standard Educators, Inc. v. FTC*, 475 F.2d 401, 403 (D.C. Cir. 1973), *cert. denied*, 414 U.S. 828 (1973).  Here, Mosher was an officer of the corporate Defendants that formed the common enterprise, and in that capacity, he exercised broad authority over all aspects of Defendants' operations, including the debiting campaigns.   He managed Defendants consumer leads and account information, debits of consumer accounts, micro-debits to manage return rates, customer service, and employee raises and bonuses.  These facts demonstrate that Mosher participated in and controlled the Defendants' unlawful debits and customer service operations.  As a result, he is likely subject to injunctive relief.

10.     An individual defendant is liable for monetary relief if he or she has knowledge of

the deceptive acts, is recklessly indifferent to them, or has an awareness of a high probability of fraud coupled with intentional avoidance of the truth.  *See FTC v. Stefanchik, 559 F.3d 924, 931 (9th Cir. 2009)*; *FTC v. Network Svcs. Depot, Inc.*, 617 F.3d 1127, 1139-41 (9th Cir. 2010); *FTC v. Amy Travel Serv., Inc.*, 875 F.2d 564, 573-74 (7th Cir. 1989).  Here, the evidence demonstrates that Mosher was directly involved in the day-today workings of Defendants' unlawful debiting campaigns and customer service.  Moreover, he told the Receiver that while he was working with the common enterprise, it was taking money from consumer accounts without authorization.  As a result, it is likely that Mosher had knowledge of the deceptive acts, was recklessly indifferent to them, or had an awareness of a high probability of fraud and intentionally avoided the truth.

11.     There is good cause to believe that immediate and irreparable damage to this Court's ability to grant effective final relief for consumers, including monetary restitution, rescission, or refunds, will occur from the sale, transfer, or other disposition by Mosher of his Assets or company records, or those Assets and company records under his control, unless he is immediately restrained and enjoined by order of this Court.  The balance of the equities favors granting the Commission's request for a Preliminary Injunction because of Mosher's injurious conduct, as well as the potential for him to dissipate consumer assets without a preliminary injunction and other equitable relief.   In the absence of such an order, the harm to the public interest is clear.  *FTC v. World Wide Factors, Ltd.*, 882 F.2d 344, 346 (9th Cir. 1989) (citing *United States v. Odessa Union Warehouse Co-op,* 833 F.2d 172, 175-76 (9th Cir. 1987), and noting that harm to the public interest is presumed by the Commission's request to enjoin conduct that violates the FTC Act).  There is thus good cause for an Asset freeze, a prohibition on certain activities, and ancillary relief.  In sum, weighing the equities and considering the

Commission's likelihood of ultimate success on the merits, a Preliminary Injunction with Asset freeze and other equitable relief against Mosher is in the public interest.

12.     The FTC is an independent agency of the United States of America.  No security is required of any agency of the United States for the issuance of a Preliminary Injunction.  Fed. R. Civ. P. 65(c).

## II.     DEFINITIONS

For the purposes of this Preliminary Injunction, the following definitions apply:

**"Asset"** means any legal or equitable interest in, right to, or claim to any real or personal property, including, but not limited to, chattel, goods, instruments, equipment, fixtures, customer lists, lead lists, consumer financial information, general intangibles, effects, leaseholds, inventory, mail or other deliveries, checks, notes, accounts, credits, receivables, shares of stock, contracts, trusts, and all funds, cash and currency, or other assets, or any interest therein, wherever located.

**"Corporate Defendants"** means Ideal Financial Solutions, Inc.; Ascot Crossing, LLC; Chandon Group, Inc.; Bracknell Shore, Ltd.; Fiscal Fitness, LLC; Avanix, LLC and their successors and assigns.

**"Defendants"** means Ideal Financial Solutions, Inc.; Ascot Crossing, LLC; Chandon Group, Inc.; Bracknell Shore, Ltd.; Fiscal Fitness, LLC; Avanix, LLC; Steven Sunyich; Christopher Sunyich; Michael Sunyich; Shawn Sunyich; Melissa Sunyich Gardner; Kent Brown; and Jared Mosher.

**"Document"** is synonymous in meaning and equal in scope to the terms "document" and "electronically stored information," as described and used in Federal Rule of Civil Procedure 34(a)(1)(A).

**Individual Defendants** means Steven Sunyich, Christopher Sunyich, Michael Sunyich, Shawn Sunyich, Melissa Sunyich Gardner, Kent Brown, and Jared Mosher.

**"Receivership Entities"** means Corporate Defendants and any entities that are part of Defendants' common enterprise, including, but not limited to, Debt Elimination Systems, LLC;

US Debt Relief, LLC; Money Mastery, LLC; US Debt Assistance Corp.; IWB Services (St. Kitts); Financial Fitness, LLC; Debt to Wealth, LLC (St. Kitts); Debt to Wealth, LLC (Nevada); Ideal Goodness, LLC; Dollars West, LLC; Fluidity, LLC; Newport Sails, LLC; Shaw Shank, LLC; Bunker Hillside, LLC; Funding Guarantee, LLC; Newline Cash, LLC; Wealth Fitness, LLC; and Zeal Funding Services, LLC.

**"Receiver"** means the Receiver appointed under the applicable section of this Preliminary Injunction.  The term "Receiver" also includes any deputy receivers or agents as may be named by the Receiver.

### III.    PROHIBITED BUSINESS ACTIVITIES

**IT IS THEREFORE ORDERED** that, in connection with the billing, invoicing, debiting, or accepting payment (collectively, "charging") for or the advertising, marketing, promotion, offering for sale, or sale of any products, goods, or services, Mosher, his successors, assigns, agents, servants, employees, or attorneys, and any person or entity in active concert or participation with him who receives actual notice of this Order by personal service or otherwise, whether acting directly or through any entity, corporation, subsidiary, division, affiliate, or other device, are **hereby preliminarily restrained and enjoined** from:

A.  Obtaining a consumer's bank account information or debiting a consumer's bank account without that consumer's express, informed consent;

B.  Obtaining a consumer's credit card information or charging a consumer's credit card without that consumer's express, informed consent;

C.  Failing to disclose or disclose adequately that Defendants will charge or debit a consumer when extending products or services to the consumer; and

D.  Making, or assisting others in the making of, expressly or by implication, any material misrepresentations, including but not limited to:

    1.   That Defendants use a consumer's authorization to further the consumer's payday loan application;

    2.   That Defendants use a consumer's authorization to help find the consumer a loan;

3.  That Defendants use a consumer's authorization to provide the consumer with financial counseling or financial services;

4.  That the consumer agreed:

    a.  to purchase Defendants' products or services, or

    b.  to pay for Defendants' products or services; or

5.  That Defendants have or will provide a refund to the consumer.

## IV.   ASSET FREEZE

**IT IS FURTHER ORDERED** that Mosher is hereby preliminarily restrained and enjoined from directly or indirectly:

A.  Transferring, liquidating, converting, encumbering, pledging, loaning, selling, concealing, dissipating, disbursing, assigning, spending, withdrawing, granting a lien or security interest or other interest in, or otherwise disposing of any Asset that is:

1.  Owned or controlled, directly or indirectly, by Mosher in whole or in part, or held, in whole or in part for his benefit;

2.  In the actual or constructive possession of Mosher;

3.  Owned, controlled by, or in the actual or constructive possession, or otherwise held for the benefit of, any corporation, partnership, asset protection trust, or other entity directly or indirectly owned, managed, or controlled by Mosher or of which he is an officer, director, member, or manager;

4.  Held by, for, under the name of, or subject to access by Mosher at any bank, savings and loan institution, broker-dealer, escrow agent, title company, insurance company, commodity trading company, payment processing company, precious metal dealer, independent sales organization, third party processor, payment gateway, or other financial institution or depository of any kind; or

5.  Held in any account for which Mosher is, or was on the date that this Order was signed or served, an authorized signator.

B.  Opening or causing to be opened any safe deposit boxes titled in the name of any Defendant or Receivership Entity, or subject to access by any Defendant or Receivership Entity;

C.  Incurring charges or cash advances on any credit card, debit card, or checking card issued in the name, singly or jointly, of any Defendant or Receivership Entity;

D.  Obtaining a personal or secured loan;

E.  Incurring liens or encumbrances on real property, personal property or other Assets in the name, singly or jointly, of any Defendant or Receivership Entity; and

F.  Cashing any checks from consumers, clients, or customers of any Defendant or Receivership Entity.

The Assets affected by this Section shall include:  (1) all Assets of Defendants and Receivership Entities existing as of the time this Order was entered; and (2) for Assets obtained after the time this Order was entered, those Assets of Defendants and Receivership Entities that are derived, directly or indirectly, from Defendants' and Receivership Entities' activities related to unauthorized debiting or charging or deceptive statements regarding consumers' authorizations regarding debits or charges as described in the Commission's Amended Complaint or activities that are the subject of, or are prohibited by, the Order.

This Section does not prohibit transfers to the Receiver, as specifically required in the Section on Delivery of Receivership Property, nor does it prohibit the repatriation of foreign Assets, as specifically required in the Section on Repatriation of Foreign Assets of this Order.

## V.    FINANCIAL REPORTS AND ACCOUNTING

**IT IS FURTHER ORDERED** that Mosher shall:

A.  Prepare and serve on counsel for the FTC and the Receiver, within three (3) business days after service of this Order, completed financial statements fully disclosing his finances and those of all corporations, limited liability companies, partnerships, trusts or other entities that he owns, controls, or is associated with in any capacity, jointly or individually, using the forms attached to this Order as Attachment A, accurate as of the date of service of this Order upon it;

B.  Prepare and serve on counsel for the FTC and the Receiver, within three (3)

business days after service of this Order, copies of signed and completed federal and state income tax forms, including all schedules and attachments, for the three most recent filing years;

C.  Provide access to records and Documents held by financial institutions outside the territory of the United States by signing the Consent to Release of Financial Records (attached to this Order as Attachment B) immediately upon service of this Order upon it; and

D.  Provide copies of such other financial statements as the Receiver or the FTC may request in order to monitor his compliance with the provisions of this Order.

## VI.   RETENTION OF ASSETS AND RECORDS BY FINANCIAL INSTITUTIONS AND THIRD PARTIES

**IT IS FURTHER ORDERED** that any financial or brokerage institution or depository, escrow agent, title company, commodity trading company, payment processing company, trust, entity or person that:  (1) holds, controls, or maintains custody of any account or Asset owned or controlled by Mosher; (2) holds, controls, or maintains custody of any Asset associated with credit or debit card charges, electronic fund transfers, or remotely created checks made by, or on behalf of, Mosher; or (3) has held, controlled, or maintained any account or Asset of, or on behalf of, Mosher at any time since January 1, 2010, shall, upon service of this Order:

A.  Hold and retain within its control and prohibit any person or entity with control over such Assets from withdrawing, removing, assigning, transferring, pledging, encumbering, disbursing, dissipating, converting, selling, gifting, or otherwise disposing of any such Assets except:

1.   As directed by further order of the Court; or

2.   As directed in writing by the Receiver (regarding Assets held in the name of or for the benefit of a Receivership Entity);

B.  Deny Mosher access to any safe deposit box titled in the name of any Defendant or Receivership Entity, individually or jointly, or subject to access by any Defendant or Receivership Entity, whether directly or indirectly;

C.  Provide counsel for the FTC and the Receiver, within three (3) business days after being served with a copy of this Order, a certified statement setting forth:

1. The identification number of each such account or Asset titled:

    a.  In the name, individually or jointly, of Mosher;

    b.  Held on behalf of, or for the benefit of, Mosher;

    c.  Owned or controlled by Mosher; or

    d.  Otherwise subject to access by Mosher, directly or indirectly;

2. The balance of each such account, or a description of the nature and value of such Asset, as of the close of business on the day on which this Order is served, and, if the account or other Asset has been closed or removed, the date closed or removed, the total funds removed in order to close the account, and the name of the person or entity to whom such account or other Asset was remitted;

3. The identification of any safe deposit box that is either titled in the name of Mosher, or is otherwise subject to access by Mosher; and

4. If an account, safe deposit box, or other Asset has been closed or removed, the date closed or removed, the balance of any account or value of any Asset on such date, and the manner in which such account or Asset was closed or removed;

    D.  Provide counsel for the FTC and the Receiver, within three (3) business days after being served with a request, copies of all Documents pertaining to such account or Asset, including but not limited to originals or copies of account applications, account statements, signature cards, checks, drafts, deposit tickets, transfers to and from the accounts, all other debit and credit instruments or slips, currency transaction reports, 1099 forms, and safe deposit box logs, provided that such institution or custodian may charge a reasonable fee; and

    E.   Cooperate with all reasonable requests of the Receiver relating to this Order's implementation.

**VII.   REPATRIATION OF FOREIGN ASSETS**

**IT IS FURTHER ORDERED** that, within three (3) business days following the service of this Order, Mosher shall:

A.   Provide counsel for the FTC and the Receiver with a full accounting of all Assets outside of the territory of the United States which are held either:

   1.   By Mosher;

   2.   For the benefit of Mosher; or

   3.   Under direct or indirect control, individually or jointly, of Mosher, as required by the forms included in Attachment A;

B.   Transfer to the territory of the United States all such Assets in foreign countries; and

C.   Hold and retain all repatriated Assets, and prevent any disposition, transfer, or dissipation whatsoever of any such Assets, except as required by this Order.

**VIII.   NON-INTERFERENCE WITH REPATRIATION**

**IT IS FURTHER ORDERED** that Mosher, and each of his successors, assigns, agents, servants, employees, and attorneys, and those persons in active concert or participation with him who receive actual notice of this Order by personal service or otherwise, whether acting directly or through any entity, corporation, subsidiary, division, affiliate or other device, are hereby preliminarily restrained and enjoined from taking any action, directly or indirectly, that may result in the encumbrance or dissipation of foreign Assets, or in the hindrance of the repatriation required by Section VII of this Order, including but not limited to:

A.   Sending any statement, letter, fax, e-mail, or wire transmission, telephoning or engaging in any other act, directly or indirectly, that results in a determination by a foreign trustee or other entity that a "duress" event has occurred under the terms of a foreign trust agreement, until such time that all Assets have been fully repatriated pursuant to Section VII of this Order; and

B.   Notifying any trustee, protector, or other agent of any foreign trust or other related entities of either the existence of this Order, or of the fact that repatriation is required pursuant to

a Court Order, until such time that all Assets have been fully repatriated pursuant to Section VII of this Order.

## IX.    COOPERATION WITH THE RECEIVER

**IT IS FURTHER ORDERED** that Mosher, his successors, assigns, agents, servants, employees, and attorneys shall fully cooperate with and assist the Receiver.  Such cooperation and assistance shall include but not be limited to providing any information to the Receiver that the Receiver deems necessary to exercise the authority and discharge the responsibilities of the Receiver under this Order or the February 15th PI; providing any login and password required to access any computer or electronic files or information in any medium; and advising all persons who owe money to Receivership Entities that all debts should be paid directly to the Receiver. Mosher and his successors, assigns, agents, servants, employees, and attorneys are hereby restrained and enjoined from directly or indirectly:

A.    Transacting any of the business of Receivership Entities;

B.    Excusing debts owed to Receivership Entities;

C.    Destroying, secreting, defacing, transferring, or otherwise altering or disposing of any Documents of Receivership Entities;

D.    Transferring, receiving, altering, selling, encumbering, pledging, assigning, liquidating, or otherwise disposing of any Assets owned, controlled, or in the possession or custody of, or in which an interest is held or claimed by, Receivership Entities or the Receiver;

E.    Failing to notify the Receiver of any Asset of a Receivership Entity held in any name other than the name of such entity, or by any person or entity other than a Receivership Entity, or failing to provide any assistance or information requested by the Receiver in connection with obtaining possession, custody, or control of such Assets; or

F.    Doing any act or thing whatsoever to interfere with the Receiver's taking and keeping custody, control, possession, or managing of the Assets or Documents subject to this receivership; or to harass or interfere with the Receiver in any way; or to interfere in any manner with the exclusive jurisdiction of this Court over the Assets or Documents of Receivership Entities; or to refuse to cooperate with the Receiver or the Receiver's duly authorized agents in

the exercise of their duties or authority under any Order of this Court.

This Section does not prohibit transfers to the Receiver, as specifically required in the Section on Delivery of Receivership Property or the Section on the Repatriation of Foreign Assets of this Order.

## X.     DELIVERY OF RECEIVERSHIP PROPERTY

**IT IS FURTHER ORDERED** that immediately upon service of this Order upon them, Mosher and his successors, assigns, agents, servants, employees, and attorneys, shall forthwith or within such time as permitted by the Receiver in writing, deliver to the Receiver possession and custody of:

A.     All Assets of Receivership Entities, whether situated within or outside the territory of the United States, that are:

      1.     Held by Receivership Entities;

      2.     Held for the benefit of Receivership Entities; or

      3.     Under the direct or indirect control, individually or jointly, of Receivership Entities;

B.     All Documents of Receivership Entities, including but not limited to all books and records of Assets, all financial and accounting records, balance sheets, income statements, bank records (including monthly statements, canceled checks, records of wire transfers, records of ACH transactions, and check registers), corporate minutes, contracts, customer and consumer lists, title Documents, and electronic records;

C.     All Assets belonging to members of the public now held by Receivership Entities;

D.      Any mobile phones, computers, or devices (e.g., cell phone, smart phone, tablet, laptop) used predominantly for the benefit of, or issued by, Receivership Entities;

E.     All keys, computer and other passwords, entry codes, combinations to locks required to open or gain access to any of the property or effects, and all monies in any bank deposited to the credit of Receivership Entities, wherever situated; and

F.     Information identifying the accounts, employees, properties, or other Assets or obligations of Receivership Entities.

In the event that any person or entity fails to deliver or transfer any Asset or Document, or otherwise fails to comply with any provision of this Section, the Receiver may file ex parte an Affidavit of Non-Compliance regarding the failure.  Upon filing of the affidavit, the Court may authorize, without additional process or demand, Writs of Possession or Sequestration or other equitable writs requested by the Receiver.  The writs shall command and direct the United States Marshal or any sheriff or deputy sheriff of any country, or any other federal or state law enforcement officer, to seize the Asset, Document , or other item covered by this Section and to deliver it to the Receiver.

## XI.     TRANSFER OF FUNDS TO THE RECEIVER BY FINANCIAL INSTITUTIONS AND OTHER THIRD PARTIES

**IT IS FURTHER ORDERED** that, upon service of a copy of this Order, any financial or brokerage institution or depository, escrow agent, title company, commodity trading company, payment processing company, or trust shall cooperate with all reasonable requests of counsel for the FTC and the Receiver relating to implementation of this Order, including producing records related to Mosher's Assets.

## XII.     ACCESS TO BUSINESS PREMISES AND RECORDS

**IT IS FURTHER ORDERED** that

A.     Mosher and his employees or agents shall provide the Receiver with any necessary means of access to Documents, devices, and records, including, without limitation, the locations of Receivership Entities' business premises, keys and combinations to locks, computer access codes, device passwords, and storage area access information.

B.     Immediately upon service of this Order upon them, Mosher and his agents, employees, servants and those persons in active concert and participation with him shall produce to the Receiver all computers and other electronic data devices containing information related to the business practices or finances of Receivership Entities, including, but not limited to, those computers and other electronic data devices located at Mosher's personal residence(s).  In order to prevent the destruction of electronic data, upon service of this Order upon them, Mosher and his agents, employees, servants, and those persons in active concert and participation with him

shall power down (turn off) such computers or other electronic data devices containing such information in the normal course for the operating systems used on such devices and shall not use such computers or devices until the FTC or Receiver has copied or inspected them, along with any codes needed for access.

C.   Within forty-eight (48) hours of service of this Order, Mosher shall produce to the Receiver a list of all agents, employees, servants, and those persons in active concert and participation with any Receivership Entity.

**XIII.   MOSHER'S ACCESS TO BUSINESS PREMISES AND RECORDS**

**IT IS FURTHER ORDERED** that the Receiver shall allow Mosher and his representatives reasonable access to the premises of Receivership Entities.  The purpose of this access shall be to inspect, inventory, and copy any Documents and other property owned by, or in the possession of, Receivership Entities, provided that those Documents and property are not removed from the premises without the permission of the Receiver.  The Receiver shall have the discretion to determine the time, manner, and reasonable conditions of such access.

**XIV.   PRESERVATION OF RECORDS**

**IT IS FURTHER ORDERED** that Mosher and his successors, assigns, agents, servants, employees, and attorneys, and those persons in active concert or participation with him who receive actual notice of this Order by personal service or otherwise, whether acting directly or through any entity, corporation, subsidiary, division, affiliate or other device, are hereby preliminarily restrained and enjoined from destroying, erasing, mutilating, concealing, altering, transferring, or otherwise disposing of, in any manner, directly or indirectly, any Documents that relate to the business practices or finances of any Defendant, including, but not limited to, any contracts, accounting data, correspondence, advertisements, computer tapes, disks or other computerized records, books, written or printed records, lead lists, consumer or customer lists or financial data, handwritten notes, recordings, telephone logs, telephone scripts, receipt books, ledgers, personal and business canceled checks and check registers, bank statements, appointment books, copies of federal, state, or local business or personal income or property tax returns.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## XV.   PROHIBITION ON USE OF CONSUMER INFORMATION

**IT IS FURTHER ORDERED** that Mosher and his agents, servants, employees, salespersons, and attorneys, as well as all other persons or entities in active concert or participation with him, who receive actual notice of this Order by personal service or otherwise, whether acting directly or indirectly, including by assisting, consulting, brokering, planning, investing, or advising, are hereby preliminarily restrained and enjoined from using, benefitting from, selling, renting, leasing, transferring, or otherwise disclosing the name, address, telephone number, email address, social security number, credit card number, debit card number, bank account number, any financial account number, or any data that enables access to a consumer's account, or other identifying information of any person which any Defendant or Receivership Entity obtained prior to entry of this Order in connection with or with a purpose of billing, invoicing, debiting, or accepting payment for or the marketing or sale of any actual or sham good or service, including those who were contacted or are on a list to be contacted by any of the Defendants or Receivership Entities.  Notwithstanding the foregoing, Mosher may disclose such identifying information to a law enforcement agency (including the FTC), Receiver, or as required by any law, regulation, or court order.

## XVI.   CREDIT REPORTS

**IT IS FURTHER ORDERED** that the FTC may obtain credit reports concerning Mosher pursuant to Section 604(a)(1) of the Fair Credit Reporting Act, 15 U.S.C. §1681b(a)(1), and that, upon written request, any credit reporting agency from which such reports are requested shall provide them to the FTC.

## XVII.   RECORDKEEPING/BUSINESS OPERATIONS

**IT IS FURTHER ORDERED** that Mosher and his agents, servants, employees, salespersons, and attorneys, as well as all other persons or entities in active concert or participation with him, who receive actual notice of this Order by personal service or otherwise, whether acting directly or indirectly, including by assisting, consulting, brokering, planning, investing, or advising, are hereby preliminarily restrained and enjoined from:

A.   Failing to create and maintain Documents that, in reasonable detail, accurately,

fairly, and completely reflect their incomes, disbursements, transactions, and use of money;

B.    Creating, operating, or exercising any control over any business entity, including any partnership, limited partnership, joint venture, trust, sole proprietorship, limited liability company or corporation, without first providing the Commission with a written statement disclosing:

      1.    The name of the business entity;

      2.    The address and telephone number of the business entity;

      3.    The names of the business entity's officers, directors, principals, managers and employees; and

      4.    A detailed description of the business entity's intended activities;

C.    Professionally affiliating with, becoming employed by, or performing any remunerative work for any business or person without first providing the Commission with a written statement disclosing:

      1.    The name of the business or person;

      2.    The address and telephone number of the business or person; and

      3.    A detailed description of the nature of affiliation, employment, or work and the nature of the Defendant's duties and responsibilities.

**XVIII.    STAY OF ACTIONS**

**IT IS FURTHER ORDERED** that:

A.    Except by leave of this Court, during the pendency of the Receivership ordered herein, Mosher and his customers, creditors, lessors, and other persons seeking to establish or enforce any claim, right, or interest against or on behalf of Mosher and all others acting for or on behalf of such persons, including attorneys, trustees, agents, sheriffs, constables, marshals, and other officers and their deputies, and their respective attorneys, servants, agents, and employees be and are hereby stayed from:

      1.    Commencing, prosecuting, continuing, entering, or enforcing any suit or proceeding, except that such actions may be filed to toll any applicable statute of limitations;

2. Accelerating the due date of any obligation or claimed obligation; filing or enforcing any lien; taking or attempting to take possession, custody, or control of any Asset; attempting to foreclose, forfeit, alter, or terminate any interest in any Asset, whether such acts are part of a judicial proceeding, are acts of self-help, or otherwise;

3. Executing, issuing, serving, or causing the execution, issuance or service of, any legal process, including but not limited to attachments, garnishments, subpoenas, writs of replevin, writs of execution, or any other form of process, whether specified in this Order or not; or

4. Doing any act or thing whatsoever to interfere with the Receiver taking custody, control, possession, or management of the Assets or Documents subject to this receivership; or to harass or interfere with the Receiver in any way; or to interfere in any manner with the exclusive jurisdiction of this Court over Receivership Entities' Assets or Documents.

B. This Section does not stay:

1. The commencement or continuation of a criminal action or proceeding;

2. The commencement or continuation of an action or proceeding by a governmental unit to enforce such governmental unit's police or regulatory power;

3. The enforcement of a judgment, other than a money judgment, obtained in an action or proceeding by a governmental unit to enforce such governmental unit's police or regulatory power; or

4. The issuance to Mosher of a notice of tax deficiency.

## XIX.   SERVICE OF ORDER

**IT IS FURTHER ORDERED** that copies of this Order may be served by any means, including facsimile transmission or email, by employees or agents of the FTC or the Receiver, upon any financial institution or other entity or person that may have possession, custody, or control of any of Mosher's Documents or Assets, or that may otherwise be subject to any

provision of this Order.  Service upon any branch or office of any financial institution shall effect service upon the entire financial institution.

### XX.   ACKNOWLEDGMENT OF RECEIPT OF ORDER BY MOSHER

**IT IS FURTHER ORDERED** that Mosher, within three (3) business days of receipt of this Order, must submit to counsel for the FTC a truthful sworn statement acknowledging receipt of this Order.

### XXI.   PROOF OF DISTRIBUTION OF ORDER BY MOSHER

**IT IS FURTHER ORDERED** that Mosher shall immediately provide a copy of this Order to his agents, servants, employees, consultants, and any affiliated businesses, and other persons and entities subject in any part to their direct or indirect control.  Within five (5) business days of receipt of this Order, Mosher must submit to counsel for the FTC a truthful sworn statement identifying those persons and entities to whom this Order has been distributed.

### XXII.  CORRESPONDENCE

**IT IS FURTHER ORDERED** that, for the purposes of this Order, because mail addressed to the FTC is subject to delay due to heightened security screening, all correspondence and service of pleadings on Plaintiff shall be sent either via electronic transmission or via Federal Express to:

R. Michael Waller

Megan E. Gray

600 Pennsylvania Avenue, NW

Mailstop M-8102B

Washington, DC 20580

Telephone: (202) 326-2902 (Waller), (202) 326 -3408 (Gray)

Fax: (202) 326-2558

Email: rwaller@ftc.gov, mgray@ftc.gov

**XXIII.   RETENTION AND DISCLOSURE OF DOMAIN NAME REGISTRATIONS, AND OTHER DIGITAL RECORDS BY REGISTRARS, ISPS, AND OTHER THIRD PARTIES**

**IT IS FURTHER ORDERED** that any ISP (Internet Service Provider), website hosting provider, domain name registrar, lead provider, database manager, cloud provider, third-party CRM database manager (Customer Relationship Management), SaaS licensor (Software As A Service), entity, or person that holds, controls, or maintains custody of any website, database, consumer lead list, digital data, computer logs, or other electronic record ("Digital Data") owned or controlled by, or made by or on behalf of, Mosher shall, upon service of this Order:

A.   Hold and retain within its control and prohibit any person or entity with control over such Digital Data from withdrawing, removing, assigning, transferring, pledging, encumbering, disbursing, dissipating, converting, selling, gifting, or otherwise disposing of any such Digital Data, except:

    1.   As directed by further order of the Court; or

    2.   As directed in writing by the Receiver (regarding Digital Data held in the name of or for the benefit of a Receivership Entity);

B.   Deny Mosher access to any original computer logs generated by or in the name of any Defendant or Receivership Entity, or subject to access by any Defendant or Receivership Entity, whether directly or indirectly;

C.   Unless already provided pursuant to the Temporary Restraining Order entered on January 30, 2013 (D.E. 10), provide counsel for the FTC and the Receiver, within three (3) days after being served with a request, copies of such Digital Data, provided that such institution or custodian may charge a reasonable fee;

D.   Prevent the destruction or erasure of any Internet website, or its underlying computer logs, that is owned by or on behalf of Mosher, or predominantly for his benefit, by preserving such websites in the format in which they are currently maintained, except:

    1.   As directed by further order of the Court; or

    2.   As directed in writing by the Receiver (regarding Digital Data held in the name of or for the benefit of a Receivership Entity); and

E.   Provide to counsel for the FTC and the Receiver, within three (3) days after being served with a request, a list of all Internet domain names registered by Mosher or his agents, servants, employees, and those persons in active concert or participation with him who received actual notice of this Order by personal service or otherwise.

F.   Cooperate with all reasonable requests of the Receiver relating to this Order's implementation.

## XXIV.   DURATION OF ORDER

**IT IS FURTHER ORDERED** that the Preliminary Injunction granted herein shall remain in full force and effect until further order of the Court.

## XXV.   RETENTION OF JURISDICTION

**IT IS FURTHER ORDERED** that this Court shall continue to retain jurisdiction of this matter for all purposes.

**IT IS SO ORDERED**:

_____

United States District Judge

this __8th__ day of ___May___, 2013, at __8:26__ o'clock a.m./p.m.

-23-

**Certificate of Service**

**FTC v. Ideal Financial Solutions, Inc., et al.**

**Case No. 13-cv-00143-MMD-GWF**

I, R. Michael Waller, certify that on 4/10/2013, I served the

- FTC's First Amended Complaint,
- FTC's Motion for Preliminary Injunction with Other Equitable Relief against Jared Mosher,
- FTC's Memorandum in Support of its Motion for Preliminary Injunction, and
- [Proposed] Preliminary Injunction with Other Equitable Relief

on the following parties in the manner indicated.

| _Defendants_ | _Via Email (with Consent)_ |
|---|---|
| Ideal Financial Solutions, Inc. | Thomas McNamara, Esq. |
| Ascot Crossing, LLC | Andrew Robertson, Esq. |
| Chandon Group, Inc. | Ballard Spahr |
| Bracknell Shore, Ltd. | 655 West Broadway, Suite 1600 |
| Fiscal Fitness, LLC | San Diego, CA 92101-8494 |
| Avanix, LLC | mcnamarat@ballardspahr.com |
|  | RobertsonA@ballardspahr.com |
| _Additional Receivership Entities_ |  |
| Debt Elimination Systems, LLC |  |
| US Debt Relief, LLC |  |
| Money Mastery, LLC |  |
| US Debt Assistance Corp. |  |
| IWB Services (St. Kitts) |  |
| Financial Fitness, LLC |  |
| Debt to Wealth, LLC (St. Kitts) |  |
| Debt to Wealth, LLC (Nevada) |  |
| Ideal Goodness, LLC |  |
| Dollars West, LLC |  |
| Fluidity, LLC |  |
| Newport Sails, LLC |  |
| Shaw Shank, LLC |  |
| Bunker Hillside, LLC |  |
| Funding Guarantee, LLC |  |
| Newline Cash, LLC |  |
| Wealth Fitness, LLC |  |
| Zeal Funding Services, LLC |  |

| Steven Sunyich | *Via U.S. Mail and Email*<br>Steve Sunyich<br>7255 W. Sunset Rd. #2104<br>Las Vegas, NV 89113<br>stevesunyich@gmail.com |
|---|---|
| Christopher Sunyich | *Via U.S. Mail and Email*<br>Christopher Sunyich<br>1277 W. 2130 S.<br>St. George, UT 84770<br>chris.sunyich@gmail.com |
| Michael Sunyich | *Via U.S. Mail and Email*<br>Michael Sunyich<br>2186 W. 1270 N.<br>St. George, UT 84770<br>msunyich@gmail.com |
| Shawn Sunyich | *Via U.S. Mail and Email*<br>Shawn Sunyich<br>1238 W. 300 N.<br>St. George, UT 84770<br>Shawn.sunyich@gmail.com |
| Melissa Sunyich Gardner | *Via U.S. Mail and Email*<br>Melissa Sunyich Gardner<br>620 S. 170W<br>Ivins, UT 84765<br>melissajoygardner@yahoo.com |
| Kent Brown | *Via Email and U.S. Mail*<br>Mark S. Dzarnoski, Esq. (Kent Brown counsel)<br>Gordon & Silver<br>3960 Howard Hughes Parkway<br>Ninth Floor<br>Las Vegas, Nevada  89169<br>mdzarnoski@gordonsilver.com |
| Jared Mosher | *Via Process Server and U.S. Mail*<br>Jared Mosher<br>634 Cynthia Lane<br>Santa Clara, UT 84765 |

April 10, 2013         /s/ R. Michael Waller

-25-

**FEDERAL TRADE COMMISSION**

**FINANCIAL STATEMENT OF INDIVIDUAL DEFENDANT**

**Definitions and Instructions:**

1. Complete all items. Enter "None" or "N/A" ("Not Applicable") in the first field only of any item that does not apply to you. If you cannot fully answer a question, explain why.

2. "Dependents" include your spouse, live-in companion, dependent children, or any other person, whom you or your spouse (or your children's other parent) claimed or could have claimed as a dependent for tax purposes at any time during the past five years.

3. "Assets" and "Liabilities" include ALL assets and liabilities, located within the United States or any foreign country or territory, whether held individually or jointly and whether held by you, your spouse, or your dependents, or held by others for the benefit of you, your spouse, or your dependents.

4. Attach continuation pages as needed. On the financial statement, state next to the Item number that the Item is being continued. On the continuation page(s), identify the Item number(s) being continued.

5. Type or print legibly.

6. Initial each page in the space provided in the lower right corner.

7. Sign and date the completed financial statement on the last page.

**Penalty for False Information:**

Federal law provides that any person may be imprisoned for not more than five years, fined, or both, if such person:

(1) "in any matter within the jurisdiction of the executive, legislative, or judicial branch of the Government of the United States, knowingly and willfully falsifies, conceals or covers up by any trick, scheme, or devise a material fact; makes any materially false, fictitious or fraudulent statement or representation; or makes or uses any false writing or document knowing the same to contain any materially false, fictitious or fraudulent statement or entry" (18 U.S.C. § 1001);

(2) "in any . . . statement under penalty of perjury as permitted under section 1746 of title 28, United States Code, willfully subscribes as true any material matter which he does not believe to be true" (18 U.S.C. § 1621); or

(3) "in any ( . . . statement under penalty of perjury as permitted under section 1746 of title 28, United States Code) in any proceeding before or ancillary to any court or grand jury of the United States knowingly makes any false material declaration or makes or uses any other information . . . knowing the same to contain any false material declaration" (18 U.S.C. § 1623).

For a felony conviction under the provisions cited above, federal law provides that the fine may be not more than the greater of (i) $250,000 for an individual or $500,000 for a corporation, or (ii) if the felony results in pecuniary gain to any person or pecuniary loss to any person other than the defendant, the greater of twice the gross gain or twice the gross loss. 18 U.S.C. § 3571.

## BACKGROUND INFORMATION

### Item 1.  Information About You

| | |
|---|---|
| Full Name | Social Security No. |

| | | |
|---|---|---|
| Current Address of Primary Residence | Driver's License No. | State Issued |

| | |
|---|---|
| | Phone Numbers<br>Home: (    )<br>Fax: (    ) | Date of Birth:      /   /<br>(mm/dd/yyyy)<br>Place of Birth |

☐ Rent   ☐ Own      From (Date):      /   /
(mm/dd/yyyy)

E Mail Address

Internet Home Page

### Previous Addresses for past five years (if required, use additional pages at end of form)

| Address | From:     /   /<br>(mm/dd/yyyy)     Until:     /   /<br>(mm/dd/yyyy)<br><br>☐ Rent  ☐ Own |
|---|---|
| Address | From:     /   /       Until:    /   /<br><br>☐ Rent  ☐ Own |
| Address | From:     /   /       Until:    /   /<br><br>☐ Rent  ☐ Own |

Identify any other name(s) and/or social security number(s) you have used, and the time period(s) during which they were used:

### Item 2.  Information About Your Spouse or Live-In Companion

| Spouse/Companion's Name | Social Security No. | Date of Birth<br>/   /<br>(mm/dd/yyyy) |
|---|---|---|
| Address (if different from yours) | Phone Number<br>(    )<br>☐ Rent  ☐ Own      From (Date):     /   /<br>(mm/dd/yyyy) | Place of Birth |

Identify any other name(s) and/or social security number(s) you have used, and the time period(s) during which they were used:

| Employer's Name and Address | Job Title | |
|---|---|---|
| | Years in Present Job | Annual Gross Salary/Wages<br>$ |

### Item 3.  Information About Your Previous Spouse

| Name and Address | Social Security No. |
|---|---|
| | Date of Birth<br>/   /<br>(mm/dd/yyyy) |

### Item 4.  Contact Information (name and address of closest living relative other than your spouse)

| Name and Address | Phone Number<br>(    ) |
|---|---|

Initials: _____

| Item 5.  Information About Dependents (whether or not they reside with you) | | | |
|---|---|---|---|
| Name and Address | Social Security No. <br> /   / <br> (mm/dd/yyyy) | | Date of Birth <br> /   / <br> (mm/dd/yyyy) |
| | Relationship | | |
| Name and Address | Social Security No. | | Date of Birth <br> /   / <br> (mm/dd/yyyy) |
| | Relationship | | |
| Name and Address | Social Security No. | | Date of Birth <br> /   / <br> (mm/dd/yyyy) |
| | Relationship | | |
| Name and Address | Social Security No. | | Date of Birth <br> /   / <br> (mm/dd/yyyy) |
| | Relationship | | |

### Item 6.  Employment Information/Employment Income

Provide the following information for this year to date and for each of the previous five full years, for each business entity of which you were a director, officer, member, partner, employee (including self employment), agent, owner, shareholder, contractor, participant or consultant at any time during that period.  "Income" includes, but is not limited to, any salary, commissions, distributions, draws, consulting fees, loans, loan payments, dividends, royalties, and benefits for which you did not pay (*e.g.*, health insurance premiums, automobile lease or loan payments) received by you or anyone else on your behalf.

| Company Name and Address | Dates Employed | | Income Received: This year to date |
|---|---|---|---|
| | From (Month/Year) <br> / | To (Month/Year) <br> / | Year            Income <br> 20            $ <br>                      $ |
| Ownership Interest?  ☐ Yes ☐ No | | | |
| Positions Held | From (Month/Year) | To (Month/Year) | $ |
| | / | / | $ |
| | / | / | $ |
| | / | / | $ |
| Company Name and Address | Dates Employed | | Income Received: This year to date |
| | From (Month/Year) <br> / | To (Month/Year) <br> / | Year            Income <br> 20            $ <br>                      $ |
| Ownership Interest?  ☐ Yes ☐ No | | | |
| Positions Held | From (Month/Year) | To (Month/Year) | $ |
| | / | / | $ |
| | / | / | $ |
| | / | / | $ |
| Company Name and Address | Dates Employed | | Income Received: This year to date |
| | From (Month/Year) <br> / | To (Month/Year) <br> / | Year            Income <br> 20            $ <br>                      $ |
| Ownership Interest?  ☐ Yes ☐ No | | | |
| Positions Held | From (Month/Year) | To (Month/Year) | $ |
| | / | / | $ |
| | / | / | $ |
| | / | / | $ |

Initials: _____

## Item 7.  Pending Lawsuits Filed By or Against You or Your Spouse

List all pending lawsuits that have been filed by or against you or your spouse in any court or before an administrative agency in the United States or in any foreign country or territory.  *Note:  At Item 12, list lawsuits that resulted in final judgments or settlements in your favor.  At Item 21, list lawsuits that resulted in final judgments or settlements against you.*

| Caption of Proceeding | Court or Agency and Location | Case No. | Nature of Proceeding | Relief Requested | Status or Disposition |
|---|---|---|---|---|---|
|  |  |  |  |  |  |
|  |  |  |  |  |  |
|  |  |  |  |  |  |
|  |  |  |  |  |  |

## Item 8.  Safe Deposit Boxes

List all safe deposit boxes, located within the United States or in any foreign country or territory, whether held individually or jointly and whether held by you, your spouse, or any of your dependents, or held by others for the benefit of you, your spouse, or any of your dependents.

| Name of Owner(s) | Name & Address of Depository Institution | Box No. | Contents |
|---|---|---|---|
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |

Initials: _____

## FINANCIAL INFORMATION

**REMINDER:** When an item asks for information regarding your "assets" and "liabilities" include <u>ALL</u> assets and liabilities, located within the United States or in any foreign country or territory, or institution, whether held individually or jointly, and whether held by you, your spouse, or any of your dependents, or held by others for the benefit of you, your spouse, or any of your dependents. In addition, provide all documents requested in Item 24 with your completed Financial Statement.

## ASSETS

### Item 9. Cash, Bank, and Money Market Accounts

List cash on hand (as opposed to cash in bank accounts or other financial accounts) and all bank accounts, money market accounts, or other financial accounts, including but not limited to checking accounts, savings accounts, and certificates of deposit. The term "cash on hand" includes but is not limited to cash in the form of currency, uncashed checks, and money orders.

| a. Amount of Cash on Hand $ | | Form of Cash on Hand | |
|---|---|---|---|
| b. Name on Account | Name & Address of Financial Institution | Account No. | Current Balance |
| | | | $ |
| | | | $ |
| | | | $ |
| | | | $ |
| | | | $ |

### Item 10. Publicly Traded Securities

List all publicly traded securities, including but not limited to, stocks, stock options, corporate bonds, mutual funds, U.S. government securities (including but not limited to treasury bills and treasury notes), and state and municipal bonds. Also list any U.S. savings bonds.

| Owner of Security | | Issuer | Type of Security | No. of Units Owned |
|---|---|---|---|---|
| Broker House, Address | | Broker Account No. | | |
| | | Current Fair Market Value $ | Loan(s) Against Security $ | |
| Owner of Security | | Issuer | Type of Security | No. of Units Owned |
| Broker House, Address | | Broker Account No. | | |
| | | Current Fair Market Value $ | Loan(s) Against Security $ | |
| Owner of Security | | Issuer | Type of Security | No. of Units Owned |
| Broker House, Address | | Broker Account No. | | |
| | | Current Fair Market Value $ | Loan(s) Against Security $ | |

Initials: _____

## Item 11.  Non-Public Business and Financial Interests

List all non public business and financial interests, including but not limited to any interest in a non public corporation, subchapter S corporation, limited liability corporation ("LLC"), general or limited partnership, joint venture, sole proprietorship, international business corporation or personal investment corporation, and oil or mineral lease.

| Entity's Name & Address | Type of Business or Financial Interest (e.g., LLC, partnership) | Owner (e.g., self, spouse) | Ownership % | If Officer, Director, Member or Partner, Exact Title |
|---|---|---|---|---|
| | | | | |
| | | | | |
| | | | | |

## Item 12.  Amounts Owed to You, Your Spouse, or Your Dependents

| Debtor's Name & Address | Date Obligation Incurred (Month/Year) / | Original Amount Owed $ | Nature of Obligation (if the result of a final court judgment or settlement, provide court name and docket number) |
|---|---|---|---|
| | Current Amount Owed $ | Payment Schedule $ | |
| Debtor's Telephone | Debtor's Relationship to You | | |
| Debtor's Name & Address | Date Obligation Incurred (Month/Year) / | Original Amount Owed $ | Nature of Obligation (if the result of a final court judgment or settlement, provide court name and docket number) |
| | Current Amount Owed $ | Payment Schedule $ | |
| Debtor's Telephone | Debtor's Relationship to You | | |

## Item 13.  Life Insurance Policies

List all life insurance policies (including endowment policies) with any cash surrender value.

| Insurance Company's Name, Address, & Telephone No. | Beneficiary | Policy No. | Face Value $ |
|---|---|---|---|
| | Insured | Loans Against Policy $ | Surrender Value $ |
| Insurance Company's Name, Address, & Telephone No. | Beneficiary | Policy No. | Face Value $ |
| | Insured | Loans Against Policy $ | Surrender Value $ |

## Item 14.  Deferred Income Arrangements

List all deferred income arrangements, including but not limited to, deferred annuities, pensions plans, profit sharing plans, 401(k) plans, IRAs, Keoghs, other retirement accounts, and college savings plans (e.g., 529 Plans).

| Trustee or Administrator's Name, Address & Telephone No. | Name on Account | | Account No. |
|---|---|---|---|
| | Date Established /   / (mm/dd/yyyy) | Type of Plan | Surrender Value before Taxes and Penalties $ |
| Trustee or Administrator's Name, Address & Telephone No. | Name on Account | | Account No. |
| | Date Established /   / | Type of Plan | Surrender Value before Taxes and Penalties $ |

Initials: _____

## Item 15.  Pending Insurance Payments or Inheritances
List any pending insurance payments or inheritances owed to you.

| Type | Amount Expected | Date Expected  (mm/dd/yyyy) |
|------|-----------------|------------------------------|
|  | $ | /   / |
|  | $ | /   / |
|  | $ | /   / |

## Item 16.  Vehicles
List all cars, trucks, motorcycles, boats, airplanes, and other vehicles.

| Vehicle Type | Year | Registered Owner's Name | Purchase Price $ | Original Loan Amount $ | Current Balance $ |
|---|---|---|---|---|---|
| Make | | Registration State & No. | Account/Loan No. | Current Value $ | Monthly Payment $ |
| Model | | Address of Vehicle's Location | Lender's Name and Address | | |

| Vehicle Type | Year | Registered Owner's Name | Purchase Price $ | Original Loan Amount $ | Current Balance $ |
|---|---|---|---|---|---|
| Make | | Registration State & No. | Account/Loan No. | Current Value $ | Monthly Payment $ |
| Model | | Address of Vehicle's Location | Lender's Name and Address | | |

| Vehicle Type | Year | Registered Owner's Name | Purchase Price $ | Original Loan Amount $ | Current Balance $ |
|---|---|---|---|---|---|
| Make | | Registration State & No. | Account/Loan No. | Current Value $ | Monthly Payment $ |
| Model | | Address of Vehicle's Location | Lender's Name and Address | | |

| Vehicle Type | Year | Registered Owner's Name | Purchase Price $ | Original Loan Amount $ | Current Balance $ |
|---|---|---|---|---|---|
| Make | | Registration State & No. | Account/Loan No. | Current Value $ | Monthly Payment $ |
| Model | | Address of Vehicle's Location | Lender's Name and Address | | |

## Item 17.  Other Personal Property
List all other personal property not listed in Items 9 16 by category, whether held for personal use, investment or any other reason, including but not limited to coins, stamps, artwork, gemstones, jewelry, bullion, other collectibles, copyrights, patents, and other intellectual property.

| Property  Category (e.g., artwork, jewelry) | Name of Owner | Property Location | Acquisition Cost | Current Value |
|---|---|---|---|---|
|  |  |  | $ | $ |
|  |  |  | $ | $ |
|  |  |  | $ | $ |

Initials:  _____

## Item 18.  Real Property
*List all real property interests (including any land contract)*

| Property's Location | Type of Property | Name(s) on Title or Contract and Ownership Percentages |
|---|---|---|
| | | |

| Acquisition Date (mm/dd/yyyy) /   / | Purchase Price $ | Current Value $ | Basis of Valuation |
|---|---|---|---|

| Lender's Name and Address | Loan or Account No. | Current Balance On First Mortgage or Contract $ |
|---|---|---|
| | | Monthly Payment $ |

| Other Mortgage Loan(s) (describe) | Monthly Payment $ | ☐ Rental Unit |
|---|---|---|
| | Current Balance $ | Monthly Rent Received $ |

| Property's Location | Type of Property | Name(s) on Title or Contract and Ownership Percentages |
|---|---|---|
| | | |

| Acquisition Date (mm/dd/yyyy) /   / | Purchase Price $ | Current Value $ | Basis of Valuation |
|---|---|---|---|

| Lender's Name and Address | Loan or Account No. | Current Balance On First Mortgage or Contract $ |
|---|---|---|
| | | Monthly Payment $ |

| Other Mortgage Loan(s) (describe) | Monthly Payment $ | ☐ Rental Unit |
|---|---|---|
| | Current Balance $ | Monthly Rent Received $ |

## LIABILITIES

## Item 19.  Credit Cards
*List each credit card account held by you, your spouse, or your dependents, and any other credit cards that you, your spouse, or your dependents use, whether issued by a United States or foreign financial institution.*

| Name of Credit Card (e.g., Visa, MasterCard, Department Store) | Account No. | Name(s) on Account | Current Balance |
|---|---|---|---|
| | | | $ |
| | | | $ |
| | | | $ |
| | | | $ |
| | | | $ |

## Item 20.  Taxes Payable
*List all taxes, such as income taxes or real estate taxes, owed by you, your spouse, or your dependents.*

| Type of Tax | Amount Owed | Year Incurred |
|---|---|---|
| | $ | |
| | $ | |
| | $ | |

Initials: _____

**Item 21.  Other Amounts Owed by You, Your Spouse, or Your Dependents**

List all other amounts, not listed elsewhere in this financial statement, owed by you, your spouse, or your dependents.

| Lender/Creditor's Name, Address, and Telephone No. | Nature of Debt (if the result of a court judgment or settlement, provide court name and docket number) |
|---|---|
| | Lender/Creditor's Relationship to You |

| Date Liability Was Incurred<br>   /    /<br>(mm/dd/yyyy) | Original Amount Owed<br>$ | Current Amount Owed<br>$ | Payment Schedule |
|---|---|---|---|

| Lender/Creditor's Name, Address, and Telephone No. | Nature of Debt (if the result of a court judgment or settlement, provide court name and docket number) |
|---|---|
| | Lender/Creditor's Relationship to You |

| Date Liability Was Incurred<br>   /    /<br>(mm/dd/yyyy) | Original Amount Owed<br>$ | Current Amount Owed<br>$ | Payment Schedule |
|---|---|---|---|

## OTHER FINANCIAL INFORMATION

**Item 22.  Trusts and Escrows**

List all funds and other assets that are being held in trust or escrow by any person or entity for you, your spouse, or your dependents.  Include any legal retainers being held on your behalf by legal counsel.  Also list all funds or other assets that are being held in trust or escrow by you, your spouse, or your dependents, for any person or entity.

| Trustee or Escrow Agent's Name & Address | Date Established (mm/dd/yyyy) | Grantor | Beneficiaries | Present Market Value of Assets* |
|---|---|---|---|---|
| |    /    / | | | $ |
| |    /    / | | | $ |
| |    /    / | | | $ |

*If the market value of any asset is unknown, describe the asset and state its cost, if you know it.

**Item 23.  Transfers of Assets**

List each person or entity to whom you have transferred, in the aggregate, more than $5,000 in funds or other assets during the previous five years by loan, gift, sale, or other transfer (exclude ordinary and necessary living and business expenses paid to unrelated third parties).  For each such person or entity, state the total amount transferred during that period.

| Transferee's Name, Address, & Relationship | Property Transferred | Aggregate Value* | Transfer Date (mm/dd/yyyy) | Type of Transfer (e.g., Loan, Gift) |
|---|---|---|---|---|
| | | $ |    /    / | |
| | | $ |    /    / | |
| | | $ |    /    / | |

*If the market value of any asset is unknown, describe the asset and state its cost, if you know it.

Initials:  _____

**Item 24.  Document Requests**
Provide copies of the following documents with your completed Financial Statement.

| | |
|---|---|
| | Federal tax returns filed during the last three years by or on behalf of you, your spouse, or your dependents. |
| | All applications for bank loans or other extensions of credit (other than credit cards) that you, your spouse, or your dependents have submitted within the last two years, including by obtaining copies from lenders if necessary. |
| Item 9 | For each bank account listed in Item 9, all account statements for the past 3 years. |
| Item 11 | For each business entity listed in Item 11, provide (including by causing to be generated from accounting records) the most recent balance sheet, tax return, annual income statement, the most recent year-to-date income statement, and all general ledger files from account records. |
| Item 17 | All appraisals that have been prepared for any property listed in Item 17, including appraisals done for insurance purposes.  You may exclude any category of property where the total appraised value of all property in that category is less than $2,000. |
| Item 18 | All appraisals that have been prepared for real property listed in Item 18. |
| Item 21 | Documentation for all debts listed in Item 21. |
| Item 24 | All executed documents for any trust or escrow listed in Item 22.  Also provide any appraisals, including insurance appraisals that have been done for any assets held by any such trust or in any such escrow. |

## SUMMARY FINANCIAL SCHEDULES

**Item 25.  Combined Balance Sheet for You, Your Spouse, and Your Dependents**

| Assets | | Liabilities | |
|---|---|---|---|
| Cash on Hand (Item 9) | $ | Loans Against Publicly Traded Securities (Item 10) | $ |
| Funds Held in Financial Institutions (Item 9) | $ | Vehicles   Liens (Item 16) | $ |
| U.S. Government Securities (Item 10) | $ | Real Property   Encumbrances (Item 18) | $ |
| Publicly Traded Securities (Item 10) | $ | Credit Cards (Item 19) | $ |
| Non Public Business and Financial Interests (Item 11) | $ | Taxes Payable (Item 20) | $ |
| Amounts Owed to You (Item 12) | $ | Amounts Owed by You (Item 21) | $ |
| Life Insurance Policies (Item 13) | $ | **Other Liabilities (Itemize)** | |
| Deferred Income Arrangements (Item 14) | $ | | $ |
| Vehicles (Item 16) | $ | | $ |
| Other Personal Property (Item 17) | $ | | $ |
| Real Property (Item 18) | $ | | $ |
| **Other Assets (Itemize)** | | | $ |
| | $ | | $ |
| | $ | | $ |
| | $ | | $ |
| **Total Assets** | | **Total Liabilities** | |

**Item 26.  Combined Current Monthly Income and Expenses for You, Your Spouse, and Your Dependents**
Provide the current monthly income and expenses for you, your spouse, and your dependents.  Do not include credit card payments separately; rather, include credit card expenditures in the appropriate categories.

| Income (State source of each item) | | Expenses | |
|---|---|---|---|
| Salary   After Taxes<br>Source: | $ | Mortgage or Rental Payments for Residence(s) | $ |
| Fees, Commissions, and Royalties<br>Source: | $ | Property Taxes for Residence(s) | $ |
| Interest<br>Source: | $ | Rental Property Expenses, Including Mortgage Payments, Taxes, and Insurance | $ |
| Dividends and Capital Gains<br>Source: | $ | Car or Other Vehicle Lease or Loan Payments | $ |
| Gross Rental Income<br>Source: | $ | Food Expenses | $ |
| Profits from Sole Proprietorships<br>Source: | $ | Clothing Expenses | $ |
| Distributions from Partnerships, S Corporations, and LLCs<br>Source: | $ | Utilities | $ |

Initials:  _____

| Item 27.  Combined Current Monthly Income and Expenses for You, Your Spouse, and Your Dependents (cont.) | | | | |
|---|---|---|---|---|
| Distributions from Trusts and Estates<br>Source: | $ | | Medical Expenses, Including Insurance | $ |
| Distributions from Deferred Income Arrangements<br>Source: | $ | | Other Insurance Premiums | $ |
| Social Security Payments | $ | | Other Transportation Expenses | $ |
| Alimony/Child Support Received | $ | | **Other Expenses (Itemize)** | |
| Gambling Income | $ | | | $ |
| **Other Income (Itemize)** | | | | $ |
| | $ | | | $ |
| | $ | | | $ |
| | $ | | | $ |
| **Total Income** | $ | | **Total Expenses** | $ |

## ATTACHMENTS

### Item 28.  Documents Attached to this Financial Statement
List all documents that are being submitted with this financial statement.

| Item No. Document Relates To | Description of Document |
|---|---|
| | |
| | |
| | |
| | |
| | |
| | |
| | |

I am submitting this financial statement with the understanding that it may affect action by the Federal Trade Commission or a federal court.  I have used my best efforts to obtain the information requested in this statement.  The responses I have provided to the items above are true and contain all the requested facts and information of which I have notice or knowledge.  I have provided all requested documents in my custody, possession, or control.  I know of the penalties for false statements under 18 U.S.C. § 1001, 18 U.S.C. § 1621, and 18 U.S.C. § 1623 (five years imprisonment and/or fines).  I certify under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed on:

_____
(Date)

_____
Signature

# Attachment B

Attachment B

## <u>CONSENT TO RELEASE OF FINANCIAL RECORDS</u>

I, _____, residing at_____, in the United States of America, do hereby direct any bank, trust company, or financial institution, at which I have an account of any kind or at which a corporation or natural person has a bank account of any kind upon which I am authorized to draw, and its officers, employees, and agents, to disclose all information and deliver copies of all documents of every nature in their possession or control that relate to any such account to any attorney or representative of the Federal Trade Commission, and to give evidence relevant thereto, in the matter of the *Federal Trade Commission v. Ideal Financial Solutions, Inc., et al.,* Civil No. _____, before the United States District Court for the District of Nevada, and this shall be irrevocable authority for so doing.

This direction is intended to apply to the laws of countries other than the United States that restrict or prohibit the disclosure of financial information without the consent of the holder of the account, or its officers, and shall be construed as consent with respect thereto, and the same shall apply to any of the accounts for which I may be a relevant principal.

Dated: _____, 2013

Name (print): _____

Signature: _____