# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

| | |
|---|---|
| Federal Trade Commission,<br><br>Plaintiff<br><br>vs.<br><br>Ideal Financial Solutions, Inc., et al.,<br><br>Defendants | Case No.: 2:13-cv-00143-JAD-GWF<br><br>**Order Granting Second Motion to Strike Notice and Direct Entry of Default; and Denying Motions to Dismiss**<br>**[Docs. 103, 115, 145]** |

Currently before the Court are: Defendants Michael Sunyich and Melissa Sunyich Gardner's Motions to Dismiss [Docs. 103, 115]; and the FTC's Second Motion to Strike Notice, and Direct Clerk to Entry a Default [Doc. 145]. Finding that Defendants Ideal Financial Solutions, Inc; Ascot Crossing, LLC; Bracknell Shore, LTD; Chandon Group, Inc.; Fiscal Fitness, LLC, and Avanix, LLC, have failed—despite numerous opportunities—to retain counsel and file a proper answer in this action, the Court grants the FTC's Second Motion to Strike, strikes the defendants' April 25, 2013, answer to the extent it purports to respond on behalf of these entities and directs the Clerk of the Court to enter default against them. The Court also denies Michael Sunyich and Melissa Sunyich Gardner's motions to dismiss because these defendants failed to demonstrate that the FTC's complaint does not state plausible claims against them.

## Background[1]

The FTC alleges that since 2009, Defendants—corporate entities and the individuals who controlled them—took money from consumers' bank accounts or billed their credit cards without their knowledge, consent, or prior adequate notice. Doc. 32 at 9. The FTC claims that Defendants

---

[1] This description is intended only for general background and is not intended as any finding of fact.

set up shell companies, established merchant accounts with third-party payment processors, and billed consumers using these merchant accounts, with charges upwards of $30. *Id.* at 9-10. For example, during a 2010 "Debt2Wealth Campaign," deductions between $30 and $40 were charged to consumers' credit cards; when those consumers called the phone number listed on the debit transaction, they were falsely told they had purchased financial counseling services. *Id.* And during a 2011 "Funding Assurance Campaign," Defendants deducted approximately $30 from numerous consumer accounts without authorization, and falsely told consumers they had purchased payday-loan-matching services from the Defendants. *Id.* During the 2012 "Avanix Campaign," consumers contesting a $31.96 charge were told they had purchased assistance in completing a payday-loan application. *Id.* The FTC alleges that numerous other campaigns were instituted by the Defendants during this time. *Id.*

The FTC contends that the high transaction-reversal and return rates indicate a lack of consumer authorization. Doc. 32 at 12-13. While the 2011 average total return rate was 1.52%, during the "Debt2Wealth" campaign, Defendants' total return rate was 54% for all payments processed by one unnamed processor. *Id.* at 13. Similarly, while the overall 2011 unauthorized return rate was 0.03%, during the "Funding Assurance Campaign," the unauthorized return rate was approximately 2.7%. *Id.* The FTC alleges that the defendants massaged even these disproportionate figures by taking multiple *de minimus* unauthorized debts from consumer accounts and then refunding them as direct deposits, and not refunds, prior to deducting far larger amounts. *See id.* at 14. It also alleges that Defendants established call centers in the United States and abroad to handle the heavy volume of consumer complaints, and that their call-center agents misrepresented the nature of the transactions in question. *Id.* at 15-16. The FTC alleges that Defendants hid their actions by using a number of shell entities, which share the same office space and commingle assets. *Id* at 16.

The FTC sued Defendants on January 28, 2013, bringing three counts globally against all defendants in this case: unfair billing practices, deceptive billing practices, and deceptive statements that consumers authorized payment. Doc. 32 at 18-20. The FTC successfully sought a temporary restraining order against all defendants. Docs. 1; 2; 10. On February 14, 2013, the Court followed

up with a preliminary injunction that instituted, *inter alia*, an asset freeze to prevent "immediate and irreparable damage to this Court's ability to grant effective final relief for consumers, including monetary restitution." Doc. 18 at 3, 5. Upon issuing the preliminary injunction, the Court also appointed Thomas McNamara as receiver over Ideal. *Id.* at 8-9, 10-12.

### A.  The FTC's Second Motion to Strike Notice and Direct Clerk to Enter a Default [Doc. 145]

The Court first considers the FTC's Motion to Strike Defendant Steven Sunyich's "notice," Doc. 40, which advised that Ideal Financial, Ascot Crossing, LLC, Bracknell Shore, Chandon Group, Avanix, LLC, and Fiscal Fitness, LLC ("Corporate Defendants") can not afford to retain counsel because all of the assets of the Corporate Defendants have been seized. Sunyich, purportedly on behalf of the Corporate Defendants, requested relief from their deadline to answer the FTC's Amended Complaint. *Id.* at 1-2. Defendants Steven Sunyich, Christopher Sunyich, Michael Sunyich, Shawn Sunyich, and Melissa Sunyich Gardner answered the FTC's complaint on April 25, 2013, both on their own behalf and "as officers and directors" of the Corporate Defendants and other unnamed entities. Doc. 41. None of the individual defendants are attorneys, and the FTC moved to strike both the notice (Doc. 40) and the answer *to the extent it was filed on behalf of any corporate entity*. The FTC also asks the Court to direct the Clerk of Court to enter a default against the Corporate Defendants for their failure to answer. Docs. 45 at 1-2; 46.

Although no response to the FTC's motion was filed, the Court issued an Order on October 3, 2013, noting that corporate entities may only appear in federal court through a licensed attorney. Doc. 99. It then denied the FTC's motion without prejudice and provided the Corporate Defendants with 20 days to retain attorneys and file an answer to the FTC's complaint. *Id.* at 2. The Court "strongly cautioned that failure to timely obtain proper representation or file a proper response may result in the striking of [Corporate Defendants'] Response . . . and the entry of default." *Id.*

On October 25, 2013, Defendants Steven and Christopher Sunyich moved separately to "clarify" the order and requested that the Court permit additional time for the Corporate Defendants to obtain counsel, although neither defendant provided reasons for their extension requests. *See* Docs. 130 at 3; 131 at 3. By November 8, 2013, with no indication that any of the Corporate

3

Defendants had answered or otherwise taken steps to comply with the Court's order, the FTC re-urged its motion to strike and for entry of a clerk's default, noting that the Corporate Defendants' time for response has long-since passed. Doc. 145, 146.

Artificial entities like corporations, limited liability companies, and limited partnerships can only appear in Federal Court through licensed attorneys;[2] thus, pleadings filed on behalf of corporations by non-attorneys are of no effect. Under Federal Rule of Civil Procedure 15(a)(3), "Unless the court orders otherwise, any required response to an amended pleading must be made within the time remaining to respond to the original pleading or within 14 days after service of the amended pleading, whichever is later."[3] "When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default."[4]

The FTC has filed proof of service on all of the Corporate Defendants.[5] The Court concludes that this proof establishes, by "affidavit or otherwise" that none of the Corporate Defendants answered the FTC's First Amended Complaint within the time period specified in the Federal Rules of Civil Procedure. Thus, a clerk's entry of default is warranted in this case against all of these entities. The FTC's motion is granted in this respect.

For the same reasons, the Court also grants the FTC's second request to strike any portions of Doc. 41, filed by the individual defendants, that purports to assert a defense on behalf of the

---

[2] *United States v. High Country Broadcasting Co., Inc.*, 3 F.3d 1244, 1245 (9th Cir. 2013) (citing Rowland v. California Men's Colony, 506 U.S. 194, 201-02 (1993)); 28 U.S.C. § 1654; *Lattanzio v. COMTA*, 481 F.3d 137, 139-140 (2d Cir. 2007).

[3] Fed. R. Civ. Proc. 15(a)(3).

[4] *Id.* at 55(a).

[5] Ascot, Bracknell, and Avanix were served with the original complaint on February 1, 2013, Docs. 146-2 at 2; 146-3 at 2; 146-6 at 2, and Ideal and Chandon were served on February 4, 2013. Docs. 146-1 at 2; 146-4 at 2. Finally, according to a Declaration of Megan E. Gray, an FTC attorney, Receiver McNamara agreed to accept service by email on behalf of Fiscal Fitness on February 7, 2013. Doc. 146-5 at 2, 5. Admittedly, all of these service dates predate the filing of the Amended Complaint on April 10, 2013. However, Gray's affidavit indicates that she notified Defendants Steve Sunyich, Chris Sunyich, Michael Sunyich, Melissa Sunyich Gardner, Shawn Sunyich, the receiver, and counsel for Defendant Kent Brown, notifying them of their deadline to respond to the FTC's Amended Complaint. Doc. 146-5 at 2, 7. None of the Corporate Defendants filed a response to the motion to strike, although Defendants Christopher and Steven Sunyich acknowledge that the Corporate Defendants were obligated to respond to the Amended Complaint. *See* Docs. 130 at 3; 131 at 3.

Corporate Defendants. Accordingly, the Answer contained at Document 41 will be construed only as the answer of Steven Sunyich, Christopher Sunyich, Michael Sunyich, Shawn Sunyich, and Melissa Sunyich Gardner, individually. However, the Court denies the request to strike Steven Sunyich's "notice" at Doc. 40. Federal Rule of Civil Procedure 12(f) permits courts to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."[6] The target of the FTC's request to strike is a "notice," not a pleading. Accordingly, the notice will be disregarded but not stricken.

**B.      Defendants Michael and Melissa Sunyich Gardner's Motions to Dismiss [Docs. 103; 115]**

Michael Sunyich and Melissa Sunyich Gardner move to dismiss all of the FTC's allegations against them. Docs. 103; 115. In support of their requests, they offer a statement of "Relevant Facts" disputing the facts alleged in the complaint, provide exhibits for the Court to consider, and dispute the sufficiency of evidence supporting the complaint's allegations. *See* Docs. 103; 115. The FTC opposes the motion, arguing that the Court should disregard these defendants' self-serving assertions, all of which are unsupported by the record. *See* Docs. 121; 123.

**1.      Standard for Dismissal**

Federal Rule of Civil Procedure 8(a) supplies the standard for pleadings in a federal cause of action and states, "[a] pleading that states a claim for relief must contain: (1) a short and plain statement of the grounds for the court's jurisdiction . . . .; (2) a short and plain statement of the claim showing that the pleader is entitled to relief; and (3) a demand for the relief sought."[7] A district court may dismiss a complaint for failing to state a claim upon which relief can be granted under Rule 12(b)(6).[8] "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face."[9] "[A] plaintiff's obligation

---

[6] Fed. R. Civ. Proc. 12(f).

[7] *Id.* at 8(a).

[8] Fed. R. Civ. Proc. 12(b)(6).

[9] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

5

to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level."[10] The Court is also "not bound to accept as true a legal conclusion couched as a factual allegation."[11] To state a "plausible" claim for relief, the plaintiff must "plead[] factual content that allows the court to draw a reasonable inference that the defendant is liable for the misconduct alleged."[12] This requires a plaintiff to state "enough facts to raise a reasonable expectation that discovery will reveal evidence" of the allegations charged.[13]

### 2. No Conversion to Rule 56 Motions

Michael and Melissa's motions to dismiss contain neither citations to the record in this case, nor legal points and authorities that support the dismissal of the claims against them. Docs. 103; 115. They do make repeated references to the sufficiency of the evidence[14] and attach documents to their motions to dismiss, which they refer to in the course of laying out their respective positions. *See id.* The FTC contends that these motions rely on evidence outside of the pleadings and should be converted to motions for summary judgment. Docs. 121; 123. Consistent with that position, the FTC attaches a number of extraneous documents to its responses. *See id.*

Fed. R. Civ. Proc. 12(d) states that "[i]f, on a motion under Rule 12(b)(6) . . . matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56."[15] However, in considering a motion to dismiss, a district court may also consider material not physically attached to the complaint if its authenticity is not

---

[10] *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

[11] *Id.* (quoting *Papsan v. Allain*, 478 U.S. 265, 286 (1986)).

[12] *Iqbal*, 556 U.S. at 678-79.

[13] *Cafasso, U.S. ex rel. v. General Dynamics C4 Systems, Inc.*, 637 F.3d 1047, 1055 (9th Cir. 2011) (quoting *Twombly*, 550 U.S. at 556).

[14] Michael and Melissa claim, in conclusory fashion, that the FTC has produced "insufficient evidence" to support the allegations against them. *See* Docs. 103; 115. A motion to dismiss is used to evaluate the plausibility of the factual allegations, not the sufficiency of evidence. *See Iqbal*, 556 U.S. at 678.

[15] Fed. R. Civ. Proc. 12(d).

6

contested and Plaintiff's complaint necessarily relies on that material without converting the motion to one for summary judgment.[16] This "prevent[s] plaintiffs from surviving a Rule 12(b)(6) motion by deliberately omitting references to documents upon which their claims are based."[17]

Attached to both Michael and Melissa's motions is an organizational chart, purportedly showing the governing structure of Ideal Financial. Docs. 103 at 10; 115 at 9. Although the FTC's complaint may "rely" on the corporate structure of the various entities to establish Michael and Melissa's liability, the org chart only purports to establish the corporate structure of Ideal Financial, not Bracknell (which Michael is alleged to control), or Ascot (which Melissa is alleged to control). *See* Doc. 32 at 4, 6. Further, the documents are not dated, and in fact redact names from the organizational chart. *See id.* No affidavit or other evidence clarifies why the Court should overlook these omissions. The Court finds that the proffered organizational chart lacks circumstantial guarantees of trustworthiness, such that it would not be admissible on summary judgment even if conversion was appropriate, and the Court excludes this document from consideration in the context of these two motions.

Michael's motion also attaches an August 7, 2013, letter from Paula J. Stratford to U.S. District Judge Miranda Du. Doc. 103 at 12. The letter, which also contains a redaction on its upper left corner, purports to describe Stratford's relationship to Michael, indicating that Michael was part of an organization which provided charitable donations on behalf of starving children in third world countries. *See id.* This letter is both hearsay without any exception and irrelevant to the current claims against Michael, and the Court excludes it from consideration.

In sum, the Court declines to consider the additional "evidence" attached to either Michael or Melissa's motion, as this evidence is not admissible. Conversion to summary judgment is not appropriate under Rule 12(d). The Court also excludes from consideration the documents attached to the FTC's responses or Defendants' replies. Michael and Melissa's motions will be treated as Rule 12 motions to dismiss.

---

[16] *See Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001) (quotation omitted).

[17] *Parrino v. FHP, Inc.*, 146 F.3d 699, 705-06 (9th Cir. 1998), *superseded by statute on other grounds as recognized by Abrego Abrego v. The Dow Chemical Co.*, 443 F.3d 676 (9th Cir. 2006).

### 3. Merits of Dismissal Motions

#### a. Michael's motion [Doc. 103]

Michael argues, in essence, that he was a low-level employee at Ideal Financial who did not have enough authority to be meaningfully involved in the unlawful scheme. Doc. 103 at 1-3. Instead, he was tasked with "establish[ing] relationships with third party companies in order to offer the products and services provided by these companies to the Other Defendants and customers to help put money back into the customers pocket." *Id.* at 4. He also argues that he was not a signatory of and did not exercise control of any bank accounts or merchant accounts within the scope of the FTC's complaint. Doc. 103 at 3-4.[18] He also contends that he ceased working "with or for the Other Defendants or Companies since the end of September, 2012." Doc. 103 at 2. Michael's reply asserts that he was not in a position to know of any violations by members or officers of the companies he controlled. *See* Doc. 128 at 1-2.

The FTC responds by pointing out that when a defendant is a corporate officer of a small, closely held company, a presumption of control arises. Doc. 121 at 4. The FTC points to many pieces of evidence supporting its theories; however, the Court need not look past the allegations in its Complaint to find sufficient demonstration that (1) Michael was President of Bracknell, (2) Bracknell and other corporate entities were alleged to have participated in the scheme, and (3) the corporate entities were close corporations which shared assets and commingled funds. The FTC also alleges that Michael was aware of the consumer complaints regarding unauthorized billing and deception. Doc. 121 at 6. The FTC argues that even if Michael did not actually know about the consumer complaints, he was at least recklessly indifferent to them. *Id.* at 7.

The FTC alleges that Michael is President of Bracknell, and Vice President of Ideal Financial. Doc. 32 at 4. The FTC alleges that Michael "formulated, directed, controlled, had the authority to control, or participated in the acts and practices set forth in this Complaint," and "knew

---

[18] Michael also claims he has been deprived of his property without due process of law. Doc. 103 at 1. Although not an attack on the FTC's factual allegations, his argument is specious because the preliminary injunction under which his asserts were frozen was issued after notice and a hearing to all parties, and during which Michael was represented.

8

of Defendants' unauthorized billing of consumer accounts and deceptive statements to consumers, was recklessly indifferent to these acts, or was aware of a high probability of the fraud and intentionally avoided the truth." Doc. 32 at 4-6.

In its first count, the FTC charges Michael and Melissa with unfair billing practices pursuant to 15 U.S.C. §§ 45(a) and 45(n). Doc. 32 at 18. It claims that "in numerous instances Defendants obtain[ed] consumers' bank account and credit card account information and have caused billing information to be submitted for payment on those accounts without consumers' express informed consent." *Id.* The FTC alleges that these actions have, or are likely to, cause substantial injury to consumers, which "is not outweighed by countervailing benefits to consumers or competition." *Id.*

The FTC Act prohibits "unfair or deceptive acts or practices in or affecting commerce."[19] Courts regularly find unauthorized billing to be unfair.[20] Alternatively, "[a]n act or practice is deceptive if 'first, there is a representation, omission, or practice that, second, is likely to mislead consumers acting reasonably under the circumstances, and third, the representation, omission, or practice is material.'"[21] Unauthorized charges to consumer credit cards and bank accounts may violate the FTC Act if the alleged actions (1) cause substantial injury (2) that consumers cannot reasonably avoid and (3) is not outweighed by countervailing benefits to consumers or competition.[22] The FTC's second and third counts are brought under 15 U.S.C. § 45(a). In its second count, the FTC charges Michael and Melissa with deceptive billing practices pursuant to 15 U.S.C. § 45(a). Doc. 32 at 19. The FTC alleges that "Defendants represent, directly or indirectly, expressly or by implication, that consumers have authorized Defendants' charges on consumers' credit cards," which in many instances were not authorized, such that the representations were "false or misleading" in violation of 15 U.S.C. § 45(a). *Id.*

In its third count, the FTC charges Michael and Melissa with deceptive statements that

---

[19] 15 U.S.C. § 45(a).

[20] *FTC v. Inc21.com*, 745 F. Supp. 2d 975, 1003-05 (N.D. Cal. 2010); *FTC v. J.K. Publications*, 99 F. Supp. 2d 1176, 1203 (C.D. Cal. 2000).

[21] *F.T.C. v. Gill*, 265 F.3d 944, 950 (9th Cir. 2001).

[22] 15 U.S.C. § 45(n).

9

consumers authorized payment, because when consumers contacted them to seek refunds, the "Defendants represent[ed], directly or indirectly, expressly or by implication, that consumers are not entitled to a refund because they agreed: (a) to purchase Defendants' products or services, and (b) to authorize Defendants to debit money from consumers' bank accounts to pay for Defendants' products or service." Doc. 32 at 19. Because not all consumers agreed with this state of affairs, the FTC alleges that "Defendants' representations . . . [were] false or misleading and constitute[d] deceptive acts or practices in violation of . . . 15 U.S.C. § 45(a)." *Id.* at 20.

A defendant violates 15 U.S.C. § 45(a) with respect to a deceptive billing practices allegation where the practice: "(1) . . . is likely to mislead consumers acting reasonably under the circumstances (2) in a way that is material."[23] "To determine whether a representation, omission, or practice is likely to mislead, the Court considers the overall net impression the representation creates."[24] Moreover, a material representation "involves information that is important to consumers and, hence, likely to affect their choice of, or conduct regarding, a product."[25] Express claims are presumed material,[26] and the FTC does not have to prove actual reliance by consumers.[27]

Finally, individual defendants are liable for violations of the FTC Act and subject to injunctive relief if they either participate in the violations, or have authority to control them.[28] When an individual defendant acts as a corporate officer of a small, closely held company, courts presume that officer had control over its operations.[29]

Michael's motion simply fails to demonstrate, *inter alia*, that he was not a member of Bracknell, that he was not listed as an executive officer of Bracknell, or that Bracknell did not

---

[23] *F.T.C. v. Cyberspace.com*, 453 F.3d 1196, 1199 (9th Cir. 2006).

[24] *F.T.C. v. Publishers Business Services*, 821 F. Supp. 2d 1205, 1223 (D. Nev. 2010) (citing *Cyberspace.com*, 453 F.3d at 1200).

[25] Cyberspace.com, 453 F.3d at 1201.

[26] *F.T.C. v. Pantron I Corp.*, 33 F.3d 1088, 1096 (9th Cir. 1994).

[27] *F.T.C. v. Figgie International*, 994 F.2d 595, 605-06 (9th Cir. 1993).

[28] *F.T.C. v. Publishing Clearing House, Inc.*, 104 F.3d 1168, 1170 (9th Cir. 1997).

[29] *Id.* at 1170-71.

engage in the unfair practices outlined in any of the three counts described above.  Having done nothing to convince the Court that the FTC's allegations fail to allege plausible claims for relief against him with respect at least to Bracknell, Michael's motion to dismiss [Doc. 103] is denied.

### b. Melissa's Motion [Doc. 115]

Like Michael, Melissa argues that she had not been "employed by or worked with or for the Other Defendants or Companies since 2006." Doc. 115 at 1.  She claims that she was not a "decision maker" and did not have control of any bank accounts material to the FTC's allegations, and that she "resigned" in 2006, although it is not clear from what company she resigned from. *Id.* at 3-4.

The FTC's response largely rehashes the points it made in response to Michael's motion and points out that when a defendant is a corporate officer of a small, closely held company, a presumption of control arises.  Doc. 123 at 4.  The FTC argues that (1) Melissa was the director of Ascot, (2) Ascot and other corporate entities were alleged to have participated in the scheme, and (3) the corporate entities were close corporations that shared assets and commingled funds.  The FTC also alleges that Melissa was aware of the consumer complaints regarding unauthorized billing and deception or she was at least recklessly indifferent to them. *Id.* at 6-7.  The FTC's complaint alleges that Melissa owned Ascot Crossing and she "formulated, directed, controlled, had the authority to control, or participated in the acts and practices set forth in this Complaint" and "knew of Defendants' unauthorized billing of consumer accounts and deceptive statements to consumers, was recklessly indifferent to these acts, or was aware of a high probability of the fraud and intentionally avoided the truth." Doc. 32 at 4-6.

Melissa does not mention Ascot in her motion to dismiss, and her reply admits that the FTC has shown that she was the manager of Ascot.  Doc. 141 at 4.  Her motion to dismiss simply fails to show, *inter alia*, that she was not a member of Ascot or that Ascot did not engage in the transactions that form the basis of the FTC's claims against her.  Melissa does claim in her reply that Ascot had "zero" complaints, *see* Doc. 141, but a motion to dismiss is designed to evaluate the plausibility of the factual allegations in the complaint and determine whether discovery could lead to evidence supporting the claims, not to test the veracity of those factual allegations.  Melissa's motion either

gestures to evidence that is not properly before the Court, or challenges facts that can be ascertained in discovery; it does nothing to demonstrate that the FTC's allegations fail to allege plausible claims for relief against her. Melissa's motion to dismiss [#115] is denied.

**Conclusion**

Accordingly, and based on the foregoing reasons,

**IT IS HEREBY ORDERED** that Defendant Michael Sunyich's Motion to Dismiss **[Doc. 103] is DENIED.**

**IT IS FURTHER ORDERED** that Defendant Melissa Sunyich Gardner's Motion to Dismiss **[Doc. 115] is DENIED.**

**IT IS FURTHER ORDERED** that the FTC's Second Motion to Strike Notice and Direct Clerk to Entry a Default [Doc. 145] is **GRANTED.**

To the extent that the April 25, 2013, answer [Doc. 41] purports to be entered on behalf of Ideal Financial Solutions, Inc.; Ascot Crossing, LLC; Bracknell Shore, Ltd.; and Chandon Group, the answer [Doc. 41] is STRICKEN.

The Clerk of Court is directed to **enter default** against Ideal Financial Solutions, Inc.; Ascot Crossing, LLC; Bracknell Shore, Ltd.; Chandon Group; Avanix, LLC; and Fiscal Fitness, LLC.

DATED June 5, 2014

_____
JENNIFER A. DORSEY
UNITED STATES DISTRICT JUDGE