**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

Federal Trade Commission,

Plaintiff

vs.

Ideal Financial Solutions, Inc., et al.,

Defendants

Case No.: 2:13-cv-00143-JAD-GWF

**Order re: Requests for Release of Frozen Funds [Docs. 94, 130, 131]**

This case centers around the Federal Trade Commission's ("FTC's") allegations that defendants —corporate entities and the individuals who controlled them—have taken money from consumers' bank accounts or billed consumers' credit cards without their knowledge, consent, or prior adequate notice since 2009. Doc. 32. The court entered a preliminary injunction order freezing assets and appointed a receiver to marshal and manage them. Doc. 18. Defendants Michael Sunyich, Steven Sunyich, and Christopher Sunyich have filed three motions[1] with varied titles but a shared primary goal: to obtain the release of frozen funds. Docs. 94, 130, 131. Having confirmed that the order does not outline a procedure for seeking the release of these frozen funds, I use this opportunity to now establish one. To the extent the defendants' motions seek a release of the frozen funds or other relief, they are denied for lack of demonstration of good cause.

**Discussion**

The FTC filed this action on January 28, 2013, asserting claims for unfair billing practices, deceptive billing practices, and deceptive statements. Doc. 32 at 18-20. At the February 14, 2013, hearing on the FTC's motion for a preliminary injunction, Judge Miranda Du[2] indicated her belief that the proposed order would allow defendants the ability to request the receiver to release

[1] The court finds these motions appropriate for disposition without oral argument. Nev. L.R. 78-2.

[2] This case was transferred to the undersigned in August 2013. Doc. 81.

reasonable living expenses to the defendants from the frozen funds. Doc. 65 at 27. But the order that was ultimately issued contains no provision permitting any of the individual defendants to move the receiver for a release of funds. Doc. 18.

Defendants Michael, Steven, and Christopher Sunyich now move separately for the release of funds frozen by the preliminary injunction order, contending that they need these funds for their living expenses and attorneys' fees. Docs. 94, 130, 131; *see also* Doc. 65 at 27. As the order does not expressly afford this relief, in essence, defendants seek to modify the preliminary injunction order to expressly permit such disbursements. A preliminary injunction is an interlocutory order that the district court may modify "at any time before entry of a final judgment"[3] "to relieve inequities that arise after the original order."[4] "A party seeking modification or dissolution of an injunction bears the burden of establishing that a significant change in facts or law warrants revision or dissolution of the injunction."[5] I consider each defendant's request in turn.

**A. Michael Sunyich's Motion for Release of Funds [Doc. 94]**

Michael Sunyich cuts right to the chase and simply asks the court to release frozen funds. Doc. 94. He identifies various frozen accounts he contends belong to individuals (primarily his children) who he states are unconnected to the alleged scheme. *See id.* Michael asserts that he contacted the receiver multiple times for release of living expenses and attorney's fees "only to be ignored and avoided." *Id.* at 4. He requests release of "all" funds without specification and without demonstrating a need. *Id.* He states baldly that he has been "denied Due Process in this case" because he has "been prevented from using his own resources acquired separately to hire an attorney and defend himself." *Id*. at 4.

---

[3] Fed. R. Civ. Proc. 54(b); *Credit Suisse First Boston Corp. v. Grunwald*, 400 F.3d 1119, 1124 (9th Cir. 2005) (quoting *Tanner Motor Livery, Ltd. v. Avis, Inc.*, 316 F.2d 804, 809 (9th Cir. 1963)).

[4] *Id.* (internal citation omitted).

[5] *Sharp v. Weston*, 233 F.3d 1166, 1170 (9th Cir. 2000).

**B. Chris and Steven Sunyich's Requests for Clarification [Docs. 130, 131]**

Pro se defendants Steven Sunyich and Chris Sunyich approach the issue from a different angle: they ask the court to modify the preliminary injunction order to allow them to make their requests to release frozen assets to use as living expenses and legal fees directly to the receiver. Docs. 130, 131.

**C. The FTC's Responses**

To all of these requests, the FTC responds that the requested funds are "ill-gotten gains that the Court should preserve to compensate" defendants' victims. *See, e.g.*, Docs. 111 at 4; and 144 at 5. The FTC stresses that these civil-action defendants are not entitled to appointed counsel, and emphasize that defendants' "open-ended" requests have not given the court justification "to ignore its prior findings and the needs of defendants' victims." Doc. 144 at 5, 6; *see also* Doc. 111 at 4-6. The FTC further notes that the receiver has only collected "a net of $946,898, a mere fraction of the total harm" estimated at more than $24 million, and a release of these limited, frozen funds will further deplete the potential recovery for victims of defendants' scheme. Doc. 111 at 3. The FTC requests that it be permitted to conduct discovery into Michael's finances so that it can determine "whether the release of funds is necessary and how much is reasonable" before the court authorizes any such release of funds to him. *Id.* at 6-7. And as to Chris and Steven, the FTC adds that "nothing prevented" them "from finding honest employment or seeking alternative means of financial assistance" since the asset freeze. Doc. 144 at 5.

**D. The Receiver's Response**

Receiver Thomas McNamara filed a statement in response to Steven and Chris Sunyich's requests. Doc. 149. He offers his concern that there is no procedure in place to permit him to consider—and submit to the court for ultimate approval—a disbursement request. *Id*. at 2. And he represents that he has never received "any type of detailed financial breakdown" of the defendants' expenses "or the exact funds sought." *Id*. at 3.

**E. Defendants Have Not Demonstrated Good Cause for the Release of Frozen Funds, but Clarification Is Warranted.**

15 U.S.C. § 53(b) authorizes a court to freeze assets to prevent their dissipation.[6] The Ninth Circuit recognizes district courts' discretion in civil cases to "forbid or limit payment of attorney fees out of frozen assets."[7] The likelihood that frozen assets may not cover the claims of victims may not always justify denying an award of attorney's fees; the court should also consider the fact the wrongdoing has not yet been proven.[8] Trial courts should also consider whether a release of living expenses will deplete the assets available for potential victims.[9]

Defendants' conclusory arguments have not given this court any legitimate basis to release these funds after its previous finding of "good cause for an Asset freeze." Doc. 18 at 5, ¶ 9. But they have highlighted the need for the establishment of a procedure for them to seek such a release if they can support it with sufficient facts and argument.[10] It appears from the transcript of the hearing that Judge Du contemplated that the order would allow defendants to make such requests of the receiver. *See* Doc. 65 at 27. Federal Rule of Civil Procedure 66 provides, "the practice in administering an estate by a receiver or similar court-appointed officer must accord with the historical practice in federal courts or with a local rule."[11] Rule 66 "does not speak to the procedures that a court is to use in administering a receivership,"[12] and Local Rule 66-10 requires receivers to "administer the estate as nearly as may be in accordance with the practice in the administration of

---

[6] *FSLIC v. Sahni*, 868 F.2d 1096, 1097 (9th Cir. 1989); *United States v. Monsanto*, 491 U.S. 600, 614 (1989); *Caplin & Drysdale, Chtd. v. United States*, 491 U.S. 617, 628 (1989).

[7] *Commodity Futures Trading Com'n v. Noble Metals Int'l, Inc.*, 67 F.3d 766, 775 (9th Cir. 1995); *F.T.C. v. World Wide Factors, Ltd.*, 882 F.2d 344, 347 (9th Cir. 1989).

[8] *Noble Metals*, 67 F.3d at 775.

[9] *See F.T.C. v. IAB Marketing Associates, LP*, 972 F. Supp. 2d 1307, 1313-14 (S.D. Fla. 2013).

[10] The court does not mean to imply by this order any belief about defendants' ability or inability to satisfy this burden.

[11] Fed. R. Civ. Proc. 66.

[12] *United States v. Arizona Fuels Corp.*, 739 F.2d 455, 458 (9th Cir. 1984).

estates in Chapter 11 bankruptcy cases."[13]

I now grant in part Steven and Chris Sunyich's motions for clarification (Docs. 130, 131) and clarify that defendants may petition the receiver to release funds using a process not inconsistent with the practices in Chapter 11 cases. As the FTC did not include such a provision in the originally filed order, I direct the FTC to provide me with a proposed supplemental preliminary injunction order that establishes a detailed process for defendants to petition the receiver for funds. The process should outline the types and weight of evidence that a defendant must submit for the receiver's consideration of such a request, a timeline for submissions and the receiver's decision on the submissions; and a proposed process for the court's review and approval of the receiver's determination. The document should be entitled "Proposed Order Supplementing Preliminary Injunction with Other Equitable Relief" and must be filed within 20 days.

**F. Chris Sunyich's Request for Return of iPhone and Computer**

Chris Sunyich also mentions that he "would undoubtedly have more success gaining employment if" his mobile phone and computer—which he contends the receiver marshaled only for "mirroring" purposes—were returned to him. Doc. 131 at 3. The receiver represents that Chris Sunyich's computer and iPhone were, in fact, "seized for copying because they were being used for Receivership business and therefore had Receivership-related information." Doc. 149 at 3. But the receiver was forced to preserve them because "Mr. Sunyich then refused to provide a password" to the iPhone *Id*.

The preliminary injunction order required Mr. Sunyich to provide the receiver with "any mobile phones, computers, or devices . . . used prominently for the benefit of, or issued by, [the] Receivership Entities," and their passwords and entry codes. Doc. 18 at 18, § XII (D)-(E). Although Chris Sunyich's failure to provide a password for the iPhone may justify the retention of the iPhone, the receiver offers no justification for retaining the computer if, in fact, the receiver only seized the computer "for copying" as he represents in his statement. Doc. 149 at 3. Accordingly, although Chris Sunyich has not demonstrated that the return of his iPhone is presently warranted, the

---

[13] Nev. L.R. 66-10.

court sees no reason that his computer should not be. Accordingly, the receiver is directed to promptly complete any copying of the information contained on Chris Sunyich's computer and return the computer to him.

**G. All Other Aspects of the Motions Are Denied.**

The defendants' motions contain a number of other requests supported only by conclusory arguments. They ask the court to stay the October 3, 2013, order directing the corporate defendants to hire legal counsel or have default entered against them, Doc. 99. This request is denied as moot because the Clerk of Court entered a default against these entities—upon this court's instruction (Doc. 190)—on June 6, 2014. Doc. 191.

Chris Sunyich's request for appointment of counsel on his unsworn representation that he "is suffering from cognitive disabilities" and "is incompetent" is denied. *See* Doc. 131 at 3. So is Steven Sunyich's request for appointment of a lawyer[14] because he "is definitely incompetent in that he cannot represent himself in this life changing case because he does not understand all of the legal rules and procedures. . . ." Doc. 130 at 2. In essence, both defendants offer their alleged "incompetence" (unsupported by any medical opinion) as a hook to get the court to appoint an attorney to represent them in this civil case. Generally, a person has no right to counsel in civil actions.[15] A court may under "exceptional circumstances" appoint counsel for indigent civil litigants.[16] Chris and Steven Sunyich have not demonstrated their indigence, incompetence, any medical disability, or exceptional circumstances warranting this rare relief.

**Conclusion**

Accordingly, and based on the foregoing reasons,

**It is HEREBY ORDERED** that Defendant Michael Sunyich's Motion for Release of Funds **[Doc. 94] is DENIED;**

---

[14] In the guise of a guardian ad litem.

[15] *Palmer v. Valdez*, 560 F.3d 965, 970 (9th Cir. 2009).

[16] *Id.*; *see also* 28 U.S.C. § 1915(e)(1); *see also Agyeman v. Corrs. Corp. of Am.*, 390 F.3d 1101, 1103 (9th Cir. 2004), cert. denied sub nom. *Gerber v. Agyeman*, 545 U.S. 1128 (2005).

**It is FURTHER ORDERED** that Defendant Steven Sunyich's Motion for Clarification **[Doc. 130] is GRANTED in PART and DENIED in PART** as set forth herein;

**It is FURTHER ORDERED** that Defendant Christopher Sunyich's Motion for Clarification **[Doc. 131] is GRANTED in PART and DENIED in PART** as set forth herein;

**It is FURTHER ORDERED** that the FTC shall submit a Proposed Order Supplementing Preliminary Injunction with Other Equitable Relief within 20 days; and

**It is FURTHER ORDERED** that the receiver shall promptly complete the copying of any information stored on Chris Sunyich's computer and return the computer to him.

DATED September 9, 2014

_________________________________
JENNIFER A. DORSEY
UNITED STATES DISTRICT JUDGE