1

2

3

4

5

6

7

8

9

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| Federal Trade Commission, | 2:13-cv-00143-JAD-GWF |
| Plaintiff | **Order Granting in Part Motion for Summary Judgment and Motion for Default Judgment, Entering Final Judgment, and Closing Case** |
| v. | |
| Ideal Financial Solutions, Inc., et al., | [ECF 224, 225] |
| Defendants | |

10   The Federal Trade Commission sued Ideal Financial Solutions, Inc., its related entities, and

11   the people who control them alleging a wide-ranging fraud scheme in which Ideal, through a host of

12   shell entities, purchased consumer bank and credit card information from payday-loan vendors and

13   charged unwitting consumers a fee for financial services never provided.[1]  Defaults have been

14   entered against the corporate defendants,[2] and on June 30, 2015, I granted summary judgment on

15   liability against the individual defendants.[3]

16   The FTC now moves for summary judgment on relief against the individual defendants,[4] and

17   for default judgment against the corporate defendants.[5]  The FTC requests a final judgment of over

18   $43 million in equitable damages and injunctive relief against all defendants.  I find that the FTC has

19   carried its burdens to establish the claimed damages and to show that injunctive relief is appropriate,

20   but I decline to grant the entirety of the injunctive relief sought by the FTC.  Accordingly, I grant the

21

22   [1] ECF 1 (complaint); ECF 32 (amended complaint).

23
24   [2] ECF 191 (Clerk's entry of default against Ascot Crossing, LLC; Avanix, LLC; Bracknell Shore, Ltd.; Chandon Group, Inc.; Fiscal Fitness, LLC; and Ideal Financial Solutions, Inc.).

25
26   [3] ECF 223 (order granting summary judgment on liability against Jared Mosher Christopher Sunyich, Melissa Sunyich Gardner, Michael Sunyich, and Steven Sunyich).  Consent judgments have been entered against defendants Kent Brown and Shawn Sunyich.  ECF 192, 193.

27   [4] ECF 224.

28   [5] ECF 225.

FTC's motion for summary judgment and motion for default judgment in part, enter final judgment consistent with my findings below, and close this case.[6]

**Procedural History**

The FTC filed this action against Ascot Crossing, LLC; Avanix, LLC; Bracknell Shore, Ltd.; Chandon Group, Inc.; Fiscal Fitness, LLC; and Ideal Financial Solutions, Inc. (corporate defendants); and the people who control them: Kent Brown, Jared Mosher,[7] Christopher Sunyich, Melissa Sunyich Gardner, Michael Sunyich, Shawn Sunyich, and Steven Sunyich (individual defendants),[8] alleging that they orchestrated a fraud scheme using unfair billing practices (count 1), deceptive billing practices (count 2), and deceptive statements that consumers authorized payment (count 3), all in violation of the FTC Act.[9]

Shortly after filing suit, the FTC successfully moved for a temporary restraining order—followed by a preliminary injunction—under which it seized defendants' financial assets,[10] and the court appointed a receiver to oversee the operation of the corporate defendants.[11]  On June 5, 2014, a clerk's default was entered against all of the corporate defendants[12] and consent judgments were entered against Kent Brown and Shawn Sunyich.[13]  On June 30, 2015, I granted the FTC's motion for summary judgment on liability[14] against the remaining individual defendants.  But I declined to enter judgment on relief at that time because the FTC had failed to sufficiently prove the

---

[6] I find this motion suitable for disposition without oral argument.  L.R. 78-2.

[7] Court mailings to Jared Mosher have been returned undelivered for more than a year because he has apparently not updated his mailing address.  ECF 199, 203, 205, 208, 215, 229, 241, and 244.

[8] ECF 1.  The FTC added Jared Mosher as a defendant in its amended complaint.  ECF 32.

[9] 15 U.S.C. § 45.

[10] ECF 9, 18, 20.

[11] *Id.*

[12] ECF 190, 191.

[13] ECF 192, 193.

[14] ECF 223.  I incorporate that order and its findings and conclusions here and do not revisit them.

requested damages.[15]  This was largely because I declined to consider the unsworn expert report of Lisa T. Wilhelm.[16]  I gave the FTC 30 days to file a motion for summary judgment on relief if it could produce sufficient admissible evidence to support its damages calculation.

The FTC now moves for summary and default judgments that would result in a final monetary judgment and permanent injunctive relief against all defendants except Kent Brown and Shawn Sunyich.[17]  In support, the FTC submits two attorney affidavits,[18] the affidavit of an FTC data analyst,[19] and Wilhelm's now properly-authenticated expert report.[20]  I thus consider whether—with the aid of Wilhelm's report—the FTC has now sufficiently demonstrated its entitlement to summary and default judgments.  For the reasons discussed below, I find that the FTC has sufficiently established the defendants' monetary liability and that it is entitled to a narrowly-drawn injunction to prevent the defendants from committing future, similar violations of the FTC Act and to monitor their compliance.

**Motion for Summary Judgment Against the Individual Defendants**

**A.      Summary-judgment standards**

Summary judgment is appropriate when the pleadings and admissible evidence "show there is no genuine issue [of] any material fact and that the movant is entitled to judgment as a matter of law."[21]  If the moving party satisfies Rule 56 by demonstrating the absence of any genuine issue of

---

[15] *Id.*

[16] *Id.* at 26.

[17] ECF 224 (motion for summary judgment for monetary and injunctive relief against individual defendants Jared Mosher, Christopher Sunyich, Melissa Sunyich Gardner, Michael Sunyich, and Steven Sunyich); ECF 225 (motion for default judgment against corporate defendants Ascot Crossing, LLC; Avanix, LLC; Bracknell Shore, Ltd.; Chandon Group, Inc.; Fiscal Fitness, LLC; and Ideal Financial Solutions, Inc.).

[18] ECF 226-2, 226-3.

[19] ECF 226-4.

[20] ECF 226-1.

[21] *Kaiser Cement Corp. v. Fishbach & Moore, Inc.*, 793 F.2d 1100, 1103 (9th Cir. 1986).

1   material fact, the burden shifts to the party resisting summary judgment to "set forth specific facts

2   showing that there is a genuine issue for trial."[22]   The nonmoving party "must do more than simply

3   show that there is some metaphysical doubt as to the material facts"; he "must produce specific

4   evidence, through affidavits or admissible discovery material, to show that" there is a sufficient

5   evidentiary basis on which a reasonable fact finder could find in his favor.[23]

6   **B.      Monetary liability under the FTC Act**

7          The FTC Act was designed to protect consumers from economic injuries.  Courts thus "have

8   often awarded the full amount lost by consumers rather than limiting damages to defendant[s']

9   profits."[24]   The FTC need not prove that every consumer was injured; it must simply show that the

10   defendants' unlawful practices impacted an overwhelming number of consumers and caused actual

11   consumer injury.[25]   Once the FTC meets this burden, it must then "show that its calculations

12   reasonably approximated the amount of customers' net loss."[26]   The burden then "shifts to the

13   defendants to show that [the FTC's] figures [are] inaccurate."[27]

14          "An individual is personally liable for a corporation's FTC Act § 5 violations if he

15   'participated directly in the acts or practices or had authority to control them' and 'had actual

16   knowledge of material misrepresentations, was recklessly indifferent to the truth or falsity of a

17

18
19   [22] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

20
21   [23] *Bank of Am. v. Orr*, 285 F.3d 764, 783 (9th Cir. 2002) (internal citations omitted); *Bhan v. NME Hosps., Inc.*, 929 F.2d 1404, 1409 (9th Cir. 1991); *Anderson,* 477 U.S. at 248–49.

22
23   [24] *F.T.C. v. Stefanchik*, 559 F.3d 924, 931 (9th Cir. 2009) (internal citation omitted); *see F.T.C. v. Publishers Bus. Servs. Inc.*, 540 Fed. Appx. 555, 557 (9th Cir. 2013) (finding that "the district court applied an incorrect legal standard when it focused on the defendants' gain rather than the loss to the consumers.").

24

25   [25] *See F.T.C. v. Inc21.com Corp.*, 745 F. Supp. 2d 975, 1011 (N.D. Cal. 2010) (citing *Stefanchik,* 559 F.3d at 929, n. 12).

26
27   [26] *F.T.C. v. Commerce Planet, Inc.*, 878 F. Supp. 2d 1048, 1091 (C.D. Cal. 2012) (internal citations omitted).

28   [27] *Id.* (internal citation omitted).

misrepresentation, or had an awareness of a high probability of fraud along with an intentional avoidance of the truth.'"[28]  Having previously determined that the individual defendants are personally responsible for the damages caused by the defendant corporations,[29] I now consider whether there are any genuine issues of material fact as to whether the FTC has carried its burden to reasonably approximate consumer losses.

**C.   The FTC is entitled to the equitable monetary relief it requests because the consumer-loss amount is not genuinely disputed.**

The FTC submits three declarations with accompanying financial records[30] and the expert report of Lisa T. Welham to support the amount of its damage request.[31]  The FTC contends that this undisputed evidence shows consumer losses in excess of $43 million.[32]  To calculate consumer injury, the FTC relies on records from Ideal's own "customer" database, OrangeCRM,[33] and two of Ideal's payment processors, Litle & Co. and Payment Data Systems, Inc.[34]  These payment-processor records show that, in addition to the $27 million in charges recorded in the OrangeCRM database, defendants charged $5.2 million through Ideal shell company Debt Elimination Systems in 2009 and

---

[28] *F.T.C. v. Cyberspace.com LLC*, 453 F.3d 1196, 1201 (9th Cir. 2006) (quoting *F.T.C. v. Publishing Clearing House, Inc.*, 104 F.3d 1168, 1170–71 (9th Cir. 1997)).

[29] ECF 223 at 19.

[30] ECF 226-2 (Waller declaration and Payment Processor Data Systems, Inc. records); ECF 226-3 (Hobbs declaration and Litle & Co. records); ECF 226-4 (Rouge declaration).

[31] ECF 226-1.

[32] ECF 224-1.

[33] See ECF 226-4 (Rouge declaration interpreting data obtained from OrangeCRM database).

[34] Because OrangeCRM contained incomplete transaction data for credit charges in 2009 and 2010 and certain debiting campaigns in 2012, ECF 226-1 at ¶ 41, the FTC supplemented the OrangeCRM data with records from Litle & Co. And Payment Data Systems, Inc. to fill in the gaps.

2010[35] and $10.6 million through Ideal shell company Zeal Money Solutions in 2012.[36]  These

charges total $43,083,720 in net consumer losses.[37]  The FTC argues that defendants Christopher

Sunyich, Melissa Sunyich Gardener, Michael Sunyich, and Steven Sunyich, all of whom played

pivotal roles in the scheme from its inception, are jointly and severally liable for the full amount.[38]

Defendant Jared Mosher is jointly and severally liable for only $36,575,542—the losses that the

scheme caused since he joined it in late 2010.[39]

I find that the FTC has reasonably approximated the consumer-loss amount attributable to

defendants: they are jointly and severally liable for $43,083,720, except for Jared Mosher, who is

jointly and severally liable for $36,575,542.[40]  The burden thus shifted to the individual defendants to

raise genuine issues of fact as to the accuracy of these amounts.[41]

The individual defendants fail to rebut the FTC's calculations.  Only Melissa Sunyich

Gardner and Christopher Sunyich offered any response to the FTC's motion.[42]  Melissa Sunyich

Gardner argues that she "did absolutely nothing wrong" and that the court should not order monetary

---

[35] ECF 226-3 at 4–60 (spreadsheets produced by Litle & Co showing charge and return data for Debt Elimination Systems).

[36] ECF 226-2 at 23–49 (spreadsheets produced by Payment Data Systems showing charges and return data for Zeal Money Solutions).

[37] ECF 224-1 (Table).  This is the net amount lost by consumers and does not include chargebacks, refunds, and returns.  *See* ECF 226-1 at ¶ 58; ECF 226-4 at ¶¶ 15, 22; ECF 226-2 at 15, 80.

[38] ECF 224-1 at 15.

[39] *See* ECF 223 at 14 (finding that Jared Mosher joined the scheme in late 2010).

[40] This approximation is not only reasonable, but generous to defendants.  It does not include other costs incurred by the already cash-strapped victims as a result of defendants' misconduct, like overdraft fees due to the unexpected charges to their accounts.  *See* ECF 223 at 8 (finding that "[c]onsumers suffered additional harm in the form of insufficient funds fees and other bank assessments caused by the unexpected charges. . . .").

[41] *Miller v. Glenn Miller Prods., Inc.*, 454 F.3d 975, 987 (9th Cir. 2006).

[42] ECF 223, 234, 236.

1  or injunctive relief,[43] but she points to no evidence to show that the FTC's calculations are

2  inaccurate.  In his response, Christopher Sunyich likewise disclaims liability for the underlying

3  offenses and conclusorily argues that the requested relief is inappropriate.[44]  Also completely absent

4  from his response is any evidence to show that the FTC's damages calculations are inaccurate.

5       The responding defendants dispute their liability for the underlying offenses rather than the

6  FTC's damages calculations.  I previously found that the evidence "overwhelmingly" demonstrated

7  their liability:[45] the lines between the corporate defendants were so blurred that they formed a

8  "common enterprise," making each liable for the deceptive acts and practices of the others;[46] and the

9  individual defendants controlled the corporate defendants, making each individually liable for the

10  violations.[47]  I decline to reconsider the individual defendants' liability at this stage in the litigation,

11  and they have given me no legitimate reason to do so.  Because no individual defendant has satisfied

12  his or her burden to demonstrate that the FTC's damages calculations are genuinely disputed, the

13  FTC is entitled to summary judgment on damages.

14  **D.  Standard for granting permanent injunctive relief under the FTC Act.**

15       The FTC may seek a permanent injunction to prevent future violations of the FTC Act.[48]  The

16  scope of the injunction depends on the facts of the particular case; and its goal is to prevent future,

17  similar violations.[49]  Though the FTC "is not limited to prohibiting the illegal practice in the precise

18  form" it existed in the past,[50] the injunction must bear a reasonable relation to the defendants'

19

20  [43]  ECF 234 at 8.

21  [44]  ECF 236 at 2.

22  [45]  ECF 223.

23  [46] *Id.* at 20 (*quoting F.T.C. v. Grant Connect LLC*, 763 F.3d 1094, 1105 (9th Cir. 2014)).

24  [47] *Id.* at 21–23 (citing *Cyberspace.Com LLC*, 453 F.3d at 1202 (internal citation omitted).

25  [48] 15 U.S.C. § 53(b).

26  [49] *See F.T.C. v. John Beck Amazing Profits, LLC*, 888 F. Supp. 2d 1006, 1012 (C.D. Cal. 2012).

27
28  [50] *F.T.C. v. Mandel Bros.*, 359 U.S. 385, 392 (1959) (quoting *F.T.C. v. Ruberoid Co.*, 343 U.S. 470, 473 (1952)).

1  unlawful practices.[51]  When fashioning injunctive relief, courts consider several factors, including the

2  degree of scienter, frequency of violative acts, the defendants' abilities to commit future violations,

3  the degree of harm to consumers, and the defendants' acceptance of responsibility.[52]

4  **E.    The FTC has shown that permanent injunctive relief is warranted.**

5       The undisputed evidence shows that defendants operated a sophisticated scheme to defraud

6  millions of consumers out of tens of millions of dollars over a four-year period.[53]  Each had full

7  knowledge of Ideal's unlawful plan and practices, and each was fully aware of the alarming rates of

8  consumer complaints, charge backs, returns, and terminated merchant accounts.[54]  None of the

9  defendants has acknowledged his or her own culpability for the violations,[55] and the methods

10  employed by defendants are easily transferrable to other products and services.  Because defendants

11  have offered no admissible evidence to dispute these key facts, I find that injunctive relief is

12  appropriate.

13  **F.    Scope of the FTC's proposed injunction**

14       The FTC seeks to permanently enjoin defendants from (1) purchasing, collecting, or selling

15  consumer account information (except in limited circumstances), (2) accepting remotely created

16  checks and cash reload mechanisms, (3) charging consumer accounts without making material

17  disclosures, and (4) misrepresenting material facts to consumers.[56]  The FTC also seeks to

18

---

19  [51] *Litton Indus., Inc. v. F.T.C.*, 676 F.2d 364, 370 (9th Cir. 1982) (citing *F.T.C. v. Colgate-Palmolive*
20  *Co.*, 380 U.S. 374, 394–95 (1965)).

21  [52] *United States v. Zaken Corp.*, 57 F. Supp. 3d 1233, 1242 (C.D. Cal. 2014) (citing *Commerce*
   *Planet, Inc.*, 878 F. Supp. 2d at 1086).

22
23  [53] *See* ECF 223 at 8 (finding that Ideal's billing records show that it attempted to take tens of
   millions of dollars from more than a million consumers between January 2009 and January 2013);
24  *see also supra* at 6 (finding that the FTC reasonably approximated consumer losses in excess of $43
   million).

25  [54] ECF 223 at 22.

26
   [55] Except defendants Kent Brown and Shawn Sunyich.  ECF 192, 193.  They are not named in the
27  FTC's motion and are not subject to this order.

28  [56] ECF 224-2 at 8–11 (proposed order).

permanently enjoin the scheme's masterminds—Jared Mosher, Christopher Sunyich, and Steven Sunyich—from marketing credit-related products or services.[57]  Finally, the FTC requests that I impose 20-year recordkeeping and compliance-reporting requirements to ensure defendants' compliance with these directives.[58]

Defendants offer no objection to the scope of the FTC's proposed injunction, but Melissa Sunyich Gardner and Christopher Sunyich filed responses in which they generally argue that injunctive relief is not appropriate.  I nonetheless consider the reasonableness of the FTC's proposed order granting injunctive relief.

### *1.    Permanent ban on collection of consumer information (all defendants)*

Section I of the FTC's proposed order enjoins defendants from "collecting, selling, renting, brokering, purchasing, transferring, or disclosing a consumer's account number or similar identifier, in any form . . . to, from, for, or with any unaffiliated third party," except if the customer directly gives the defendant the information and the disclosure is "for the sole purpose of permitting [d]efendant to authorize and complete a specific transaction expressly authorized by the consumer," and "[d]efendant destroys consumer account information within 30 days of processing a transaction for that consumer."[59]

I find that section I of the FTC's proposed order is reasonable under the circumstances.  The collection of consumer-account information was central to the defendants' unlawful scheme: Ideal purchased consumer account numbers and data, which it then imported into its consumer databases for the purpose of making unauthorized charges.[60]  Permanently enjoining defendants from collecting and disclosing consumer-account information without the consumer's authorization is reasonably related to defendants' violations and appropriately drawn to prevent future, similar violations.

---

[57] *Id.* at 8–9.

[58] *Id.* at 18–20.

[59] ECF 224-2 at 8.

[60] ECF 223.

1    **2.      Permanent ban on remotely created checks and payment orders (all defendants)**

2    Section II of the FTC's proposed order enjoins defendants from "creating or causing to be

3    created" a "[r]emotely [c]reated [c]heck or a [r]emotely [c]reated [p]ayment [o]rder as payment for

4    any product or service" and "[a]ccepting from a consumer, directly or indirectly, or assisting others

5    in accepting from a consumer, directly or indirectly a [c]ash-to-[m]oney [t]ransfer or [c]ash [r]eload

6    [m]echanism as payment for any product or service."[61]   The FTC argues that this provision is

7    appropriate because these payment methods are "little-regulated and ripe for abuse;"[62] because

8    defendants "moved among payment methods to avoid accountability, they should be 'fenced out'

9    from using these novel payment methods."[63]

10   Though it may be true that these forms of payment are more loosely regulated than other

11   payment methods, I decline to prohibit defendants from making or accepting payments with them on

12   that basis.  Because the FTC has not shown that section II's prohibition is reasonably related to

13   defendants' misconduct, I decline to adopt it.

14

15   **3.      Permanent ban on providing credit-related products and services (defendants Jared
         Mosher, Christopher Sunyich, and Steven Sunyich)**

16   In section III, the FTC seeks to permanently enjoin the three main perpetrators from

17   "marketing, providing, or assisting others in marketing or providing any [c]redit-[r]elated [p]roduct

18   or [s]ervice or attempting to collect, sell, or assign a right to collect money from a consumer who

19   purportedly agreed to purchase a [c]redit-[r]elated [p]roduct or [s]ervice."[64]   The FTC argues that this

20   provision is necessary because these defendants "directed many of the scheme's most unscrupulous

21   practices, including posing as a lender to purchase declined payday loan applications" and "falsely

22   held themselves out as consumer credit experts" and lenders in order to purchase consumer account

23

24   _____

25   [61] ECF 224-2 at 9.

26   [62] ECF 224-1 at 23.

27   [63] *Id.* at 24.

28   [64] ECF 224-2 at 9.

information.[65]

Section III of the FTC's proposed order is reasonably related to Jared Mosher, Christopher Sunyich, and Steven Sunyich's misconduct.  This relief is especially appropriate in light of their high-level involvement in the scheme, which preyed on vulnerable customers—i.e. payday loan applicants—in need of financial assistance while purporting to offer nonexistent financial counseling and services.  For these reasons, I grant the relief requested in section III.

### 4.    *Injunction requiring consumer authorization (all defendants)*

Section IV of the FTC's proposed order enjoins defendants from "[c]harging or attempting to [c]harge any consumer's [f]inancial [a]ccount for any product or service" unless, "[b]efore obtaining the consumer's [f]inancial [a]ccount information," they make extensive disclosures to the consumer and the consumer expressly consents to the transaction.[66]

I decline to grant the relief requested in section IV because it is overly broad, and requiring defendants to make these extensive disclosures would unduly interfere with their abilities to earn a living and pay restitution, even in non-managerial positions.  There are also laws in place to prevent unauthorized consumer electronic payments that defendants may be prosecuted under if they continue to make unauthorized transactions, so I find section IV unnecessary to prevent future violations and I decline to enter it.

### 5.    *Injunction against misrepresentations (all defendants)*

In section V of the FTC's proposed order, the FTC seeks to enjoin defendants from misrepresenting any material fact "in connection with the advertising, marketing, promotion, offering for sale or sale of any product or service or the [c]harging of any [f]inancial [a]ccount."[67]  This section also requires defendants to make a laundry-list of disclosures when engaged in these activities.[68]

---

[65] ECF 224-1 at 26.

[66] ECF 224-2 at 9–10.

[67] *Id.* at 11.

[68] *Id.*

I find that section V, like section IV, is overly broad, not reasonably related to defendants' misconduct, and not necessary to prevent future, similar violations of the FTC Act by defendants. There are laws in place that guard against misleading sales and marketing campaigns that the FTC does not need an injunction to enforce.  This provision would also unduly interfere with defendants' ability to find suitable employment to pay restitution.  For these reasons, I also decline to enter the relief requested in section V of the FTC's proposed order.

### 6.     *Recordkeeping and compliance-reporting requirements (all defendants)*

Sections XI through XIV of the FTC's proposed order contain various recordkeeping and compliance-reporting requirements.  These provisions require the defendants to respond to written requests, submit compliance reports, create and maintain certain records, and distribute this court's final order to future employees.[69]  Courts routinely order this kind of recordkeeping and compliance-reporting in FTC cases,[70] and I find that these provisions are reasonable under the circumstances.  However, I reduce the reporting term from 20 to 10 years.  Because defendants do not have a history of prior violations, I find that a ten-year reporting period is reasonable under the circumstances.[71]

In sum, I decline to enter the relief requested in sections II, IV, and V of the FTC's proposed order, but I grant the rest of the requested relief to the extent that it is consistent with this order.

### Motion for Default Judgment Against the Corporate Defendants

### A.     FRCP 55 standards

Federal Rule of Civil Procedure 55 provides a mechanism for obtaining a default judgment against parties who have failed to plead or otherwise respond to claims brought against them.  After a clerk's entry of default, the movant must request a default judgment from the court under Rule

---

[69] ECF 224-1 at 24.

[70] *See e.g. F.T.C. v. Wellness Support Network, Inc.*, 2014 WL 644749, at *21–22 (N.D. Cal. Feb. 19, 2014) (entering 20-year reporting requirement); *F.T.C. v. Gil*, 71 F. Supp. 2d 1030, 1051–52 (C.D. Cal. 1999) (imposing three-year reporting requirement).

[71] *John Beck*, 888 F. Supp. 2d at 1013–1016 (upholding a 20-year reporting period for defendants who had extensive personal involvement in illegal scheme and had "long history of blatantly disregarding the law" but reducing the reporting period to ten years for other defendants who "did not have the same history.").

55(b)(2).[72]  A district court has discretion to enter a judgment by default, which typically turns on the consideration of the seven *Eitel v. McCool* factors: (1) potential prejudice to the plaintiff, (2) the merits of the plaintiff's substantive claim, (3) sufficiency of the complaint, (4) the amount of money at stake in the action, (5) the potential disputes of material facts, (6) whether the default was due to excusable neglect, and (7) the strong federal policy favoring adjudications on the merits.[73]  All but the final factor, which is neutral, weigh in favor of entering default judgment against defendants Ascot Crossing, LLC; Avanix, LLC; Bracknell Shore, Ltd.; Chandon Group, Inc.; Fiscal Fitness, LLC; and Ideal Financial Solutions, Inc.

**B.     The *Eitel* factors favor default judgments against the corporate defendants.**

The first, second, and third *Eitel* factors all weigh in favor of default judgment on each of the FTC's claims.  The FTC may suffer prejudice if default judgment is not entered because the defaulted corporate defendants have failed—despite numerous opportunities—to retain counsel and file a proper answer to the FTC's complaint.[74]  As to the second and third factors, the FTC's claims are both sufficient and have merit.  The allegations in the FTC's amended complaint, except for damages allegations, were all deemed admitted by virtue of the clerk's entry of default.  And I previously found that the FTC had met its burden to demonstrate that the corporate defendants engaged in the alleged misconduct.[75]  Thus, the first three *Eitel* factors favor default judgment.

---

[72] *Eitel v. McCool*, 782 F.2d 1470, 1471 (9th Cir. 1986); *Trustees of the Bricklayers & Allied Craftworkers Local 13 Defined Contribution Pension Trust for S. Nevada v. Tumbleweed Dev., Inc.*, 2013 WL 143378, at * 2 (D. Nev. Jan 11, 2013) (citing *Eitel*).

[73] *See Eitel*, 782 F.2d at 1471–72.

[74] *See* ECF 99 (warning defendants that corporate entities may only appear in federal court through a licensed attorney, denying the FTC's first motion to strike without prejudice, and giving corporate defendants 20 days to retain attorneys and file an answer to the FTC's complaint); *see also* ECF 190 (granting the FTC's second motion to strike and striking the defendants' April 25, 2013, answer to the extent it was filed on behalf of the corporate defendants).

[75] *See* ECF 223 at 18 (finding that the evidence "overwhelmingly" established that the corporate defendants made unauthorized charges as alleged in count one); *see also id.* at 18–19 (finding that the FTC satisfied its burden to demonstrate that the corporate defendants engaged in false billing and made material misrepresentations as alleged in counts two and three).

The fourth *Eitel* factor considers the amount of money at stake and the seriousness of the defendants' conduct, which involves an assessment of whether the recovery sought is proportional to the harm caused by defendants.[76]  The amount of money at stake attributable to the conduct alleged in the complaint and proven on summary judgment—$43,083,720—is plainly significant.  But the recovery sought is also directly proportional to the harm caused by defendants' conduct.  As discussed *supra*, the FTC has offered detailed evidence to show how it arrived at the $43 million figure, which represents the net consumer-loss amount attributable to defendants.  The fourth *Eitel* factor thus also supports default judgment.

The fifth and sixth *Eitel* factors likewise support entry of default judgment.  The fifth factor supports default judgment because a number of material facts are deemed admitted as a matter of law by virtue of the corporate defendants' default.[77]  And I found other material facts establishing their guilt to be undisputed when I granted the FTC's motion for summary judgment on liability against the individual defendants.[78]  The sixth factor also weighs in favor of default judgment because there is no evidence to suggest excusable neglect: Each corporate defendant was served with the FTC's amended complaint and the FTC's motion for entry of default;[79] but, despite numerous opportunities to properly respond, they never did.[80]

Finally, the seventh *Eitel* factor—favorability of decision on the merits—is neutral.  Federal courts generally favor decisions on the merits.  However, although default has been entered against the corporate defendants, I necessarily decided the merits of the claims against them when I granted the FTC's motion for summary judgment on liability against the individual defendants.  The record

---

[76] *See Trustees of the Bricklayers*, 2013 WL 143378, at * 3 (citations omitted).

[77] FED. R. CIV. PROC. 8(b)(6) (stating that "[a]n allegation—other than one relating to the amount of damages—is admitted if a responsive pleading is required and the allegation is not denied.").

[78] *See* ECF 223.

[79] ECF 190 at 4 (finding that the FTC filed proof of service on all the corporate defendants); ECF 145, 146, 146-1–146-5 (proof of service).

[80] *See* ECF 99, 190.

facts establishing their guilt are thus much more fully developed than in the usual default-judgment case.  In sum, I find that the *Eitel* factors weigh heavily in the FTC's favor, grant the FTC's motion to the extent it is consistent with this order, and enter a default judgment against the corporate defendants.

As discussed *supra*, the FTC has sufficiently proven the requested damages, and like the individual defendants, the corporate defendants offer no evidence to dispute the FTC's calculations. Accordingly, the corporate defendants are jointly and severally liable for $43,083,720. The FTC's proposed order against the corporate defendants is nearly identical to the one that it submitted against the individual defendants.[81]  Therefore, for the reasons discussed above, I decline to enter the relief requested under sections II-IV of the FTC's proposed order against the corporate defendants; but I grant the remainder of the requested relief to the extent that it is consistent with this order.

### Final Judgment and Permanent Injunction Order

Accordingly, with good cause appearing and no reason to delay, IT IS HEREBY ORDERED, ADJUDGED, and DECREED that:

I. **Plaintiff's motion for summary judgment for monetary and injunctive relief [ECF 224] is GRANTED in part** to the extent that it is consistent with this order;

II. **Plaintiff's motion for default judgment [ECF 225] is GRANTED in part** to the extent that is consistent with this order.

III. The Clerk of Court is instructed to **ENTER A PERMANENT INJUNCTION** against Jared Mosher; Christopher Sunyich; Melissa Sunyich Gardner; Michael Sunyich; Steven Sunyich; Ascot Crossing, LLC; Avanix, LLC; Bracknell Shore, Ltd.; Chandon Group, Inc.; Fiscal Fitness, LLC; and Ideal Financial Solutions, Inc. on the following terms:

    **A.**    **Definitions**

For purposes of this order:

    1.    "Charge" means any claimed obligation to pay against a financial account and any debit or other withdrawal from a financial account.

---

[81] *Compare* ECF 224-2 *with* ECF 225-2.

2.   "Defendants" means Jared Mosher; Christopher Sunyich; Melissa Sunyich Gardner; Michael Sunyich; Steven Sunyich; Ascot Crossing, LLC; Avanix, LLC; Bracknell Shore, Ltd.; Chandon Group, Inc.; Fiscal Fitness, LLC; and Ideal Financial Solutions, Inc. individually, collectively, or in any combination.

    a.   Jared Mosher; Christopher Sunyich; Melissa Sunyich Gardner; Michael Sunyich; Steven Sunyich are also referenced collectively as the "Individual Defendants," and

    b.   Ascot Crossing, LLC; Avanix, LLC; Bracknell Shore, Ltd.; Chandon Group, Inc.; Fiscal Fitness, LLC; and Ideal Financial Solutions, Inc. are also referenced collectively as the "Corporate Defendants."

3.   "Credit-related product or service" means a product or service that is represented, expressly or by implication, to: (a) provide any consumer or assist any consumer in receiving credit in any form; (b) provide any consumer or assist any consumer in receiving debit, prepaid, or stored-value cards; (c) improve, or arrange to improve, any consumer's credit record, credit history, or credit rating; (d) provide any consumer or assist any consumer in receiving any advice or assistance with obtaining payday loans or any other form of credit; or (e) manage the debt between a consumer and one or more services or debt collectors.

4.   "Financial account" means a credit card, debit card, a pre-paid or stored-value card, bank account, or other account through which a consumer can be charged.

5.   "Receiver" means Thomas McNamara, who was appointed as permanent equity receiver over corporate defendants and receivership entities under section IV of this court's February 15, 2013, preliminary-injunction order.[82]

6.   "Receivership entity" means the corporate defendants and their successors and assigns and any entities that are part of defendants' common enterprise, including: AFAB Corp.; Bunker Hillside, LLC; Debt Elimination Systems, LLC; Debt to Wealth, LLC

---

[82] ECF 18.

(Nevada); Debt to Wealth LLC (St. Kitts); Dollars West, LLC; Fluidity, LLC;
Financial Fitness, LLC; Funding Guarantee, LLC; Ideal Merchant Services; Ideal
Goodness, LLC; IWB Services (St. Kitts); Money Mastery, LLC; Money Online
Saver; New Day Solutions; Newline Cash, LLC; Newport Sails, LLC; Pathfinder
Enterprises; PK Travel, LLC; Shaw Shank, LLC; Trademark Media, LLC; US Debt
Assistance Corp.; US Debt Relief, LLC; Wealth Fitness, LLC; and Zeal Funding
Services, LLC.

**B.      Permanent injunctive relief**

*1.      Permanent ban on collection of consumer account information (all defendants)*

Defendants are permanently enjoined from collecting, selling, purchasing, transferring, or otherwise disclosing a consumer's account number or similar identifier to, from, for, or with any unaffiliated third party and from assisting others in doing so.

A defendant may disclose a consumer's account number or other identifier that a consumer gives directly to that defendant if disclosure is necessary to process or complete a specific transaction expressly authorized by the consumer. The defendant must then destroy the consumer account information within 30 days of processing that transaction, except as necessary to comply with section 7 below (recordkeeping).

*2.      Permanent ban on credit-related products or services (defendants Jared Mosher, Christopher Sunyich, and Steven Sunyich)*

Defendants Jared Mosher, Christopher Sunyich, and Steven Sunyich are permanently enjoined from marketing, providing, or assisting others in marketing or providing any credit-related product or services or attempting to collect, sell, or assign a right to collect money from a consumer who purportedly agreed to purchase a credit-related product or service.

*3.      Permanent ban regarding consumer information (all defendants)*

Defendants and persons acting in concert with any of them who receive actual notice of this order are permanently enjoined from:

a.      Failing to provide sufficient consumer information to enable the FTC to efficiently administer consumer redress. If a representative of the FTC

1    requests in writing any information related to redress, defendants must provide

2    it in the requested form within 14 days of receipt of the request.

3    b.    Disclosing, using, or benefitting from consumer information, including

4    identifying information and any data that enables access to a customer's

5    account, that any defendant obtained before entry of this order in connection

6    with any business of a receivership entity; and

7    c.    Failing to destroy consumer information in all forms in their possession,

8    custody, or control within 30 days of this order.  Except that consumer

9    information need not be disposed of, and may be disclosed to, the extent

10    requested by a government agency or as required by law, regulation, or court

11    order.

12    **4.    Cooperation with Receiver**

13    Defendants are instructed that they may not interfere with the Receiver's performance of his

14    duties and must cooperate fully with the Receiver in:

15    a.    Pursuing any related claims by the Receiver against other persons or entities;

16    b.    Pursing any funds or assets of a receivership entity;

17    c.    Defending any related actions or claims brought against the Receiver, the

18    receivership estate, or any receivership entity by other persons or entities; and

19    d.    Executing any documents necessary to transfer assets or ownership interests to

20    the Receiver.

21    If it becomes necessary to execute additional documents to transfer or liquidate assets of a

22    receivership entity or any other assets that are surrendered under this order, or to dissolve and wind

23    up the receivership entities, defendants must execute the requested documents within 5 days of

24    receipt of the Receiver or the FTC's request.

25    **5.    Order acknowledgments**

26    a.    Each defendant must submit to the FTC a sworn acknowledgment of receipt of

27    this order within 7 days of its entry.

28    b.    For 10 years after entry of this order, each defendant (for any business that the

defendant is the majority owner of, or directly or indirectly controls) must deliver a copy of this order to:

(i) all principals, officers, directors, and LLC managers and members;

(ii) all employees, agents, and representatives who participate in online commerce;

(iii) any business entity resulting from any change in structure as set forth in section 6 below (compliance reporting); and

(iv) any third-party facilitator for charges, including payment processors and list brokers.

Defendants must deliver a copy of this order to their current personnel within 7 days of its entry; for all others, delivery must be made before they assume their responsibilities.  Defendants must then obtain and submit a signed, dated acknowledgment of receipt of this order from each recipient within 30 days.

**6.     *Compliance reporting***

Defendants must make these submissions to the FTC:

a.     Within one year of this order, each defendant must submit a compliance report, sworn under penalty of perjury, in which each defendant must:

i.          (a) identify that defendant's primary physical, postal, and email address and telephone number as a point of contact for the FTC;

(b) identify all of that defendant's businesses by all of their names and telephone numbers and physical, postal, email, and internet addresses;

(c) describe the activities of each business, including the goods and services offered, the means of advertising, marketing, and sales, and the involvement of any other defendant;

(d) describe in detail how that defendant is in compliance with each section of this order, and

1                            (e) submit any outstanding order acknowledgments as required

2                            under section 5 of this order.

3               ii.     Each Individual Defendant must also:

4                            (a) submit all telephone numbers and all physical, postal, email

5                            and internet addresses, including all residences;

6                            (b) identify all business activities, including any business for

7                            which that defendant performs services and any entity in which

8                            the defendant has any ownership interest; and

9                            (c) describe in detail that defendant's involvement in the

10                          business, including title, role, responsibilities, participation,

11                          authority, control, and ownership.

12       b.        For 10 years after entry of this order, each defendant must submit a

13                sworn compliance notice within 14 days of any change in the

14                following:

15               i.      (a) any designated point of contact; or (b) the structure of any

16                        entity in which that defendant has any ownership interest, or

17                        that he or she controls directly or indirectly, that may affect

18                        compliance obligations arising under this order.

19               ii.     Each Individual Defendant must also report any change in:

20                         (a) name or residence address; or (b) title or role in any

21                        business activity, including any business for which that

22                        defendant performs services or has any ownership interest, and

23                        any change in that business's name, physical address, or

24                        internet address.

25       c.        Each defendant must also submit to the FTC notice of the filing of any

26              bankruptcy petition or insolvency proceeding by or against that defendant

27              within 14 days of its filing.

28       d.        Any submission to the FTC required by this order must be sworn under

penalty of perjury and comply with 28 U.S.C. § 1746 by concluding **"I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on:____" and supplying the date, signatory's full name, title (if applicable), and signature.**

    e.    Unless otherwise directed by the FTC representative in writing, all submissions to the FTC under this order must be emailed to **Debrief@ftc.gov or sent by overnight courier (not the U.S. Postal Service) to: Associate Director for Enforcement, Bureau of Consumer Protection, Federal Trade Commission, 600 Pennsylvania Avenue, NW Washington, D.C. 20580.  The subject line must begin: FTC v. Ideal Financial Solutions, et al., X130044.**

    **7.**    *Recordkeeping*

Defendants must create certain records for 10 years after entry of this order, and must retain them for 5 years after creation.  For any business that a defendant controls or is, individually or collectively with any other defendant, a majority owner, the defendant must create and retain:

    a.    Proof of consumer's consent and confirmation to a charge, including the consumer's name, phone number, and address; the manner, time, place, and method of the consent; and supporting electronic data;

    b.    Accounting records showing the revenues from all goods or services sold;

    c.    Personnel records showing, for each person providing services, whether as an employee or otherwise, that person's name, addresses, telephone numbers, job title or position, dates of service, and (if applicable) reason for termination;

    d.    Records of all consumer complaints and refund requests, whether received directly or indirectly, and any response;

    e.    All records necessary to demonstrate full compliance with each provision of this order, including all submissions to the FTC;

    f.    A copy of each unique advertisement or other marketing material, including

affiliate network materials; and

g.     Any documentation of commercial transactions or contracts with payment processors or list brokers.

**8.     *Compliance monitoring***

For purposes of monitoring defendants' compliance with this order:

a.     Within 14 days of receipt of a written request from a representative of the FTC, each defendant must: submit additional compliance reports or other requested information, which must be sworn under penalty of perjury; appear for depositions; and produce documents for inspection and copying. The FTC is also authorized to obtain discovery, without further leave of court, using any of the procedures prescribed by the Federal Rules of Civil Procedure 29, 30 (including telephonic depositions), 31, 33, 34, 36, 45, and 69.

b.     For matters concerning this order, the FTC may communicate directly with each defendant, and defendants must permit FTC representatives to interview any employee or other affiliate of that defendant who has agreed to be interviewed. The interviewee may have counsel present.

c.     The FTC may use all other lawful means to monitor defendants' compliance with this order, and nothing in this order limits the FTC's lawful use of compulsory process under sections 9 and 20 of the FTC Act, 15 U.S.C. §§ 49, 57b-1.

## IV.     Monetary judgment

A.     The Clerk of Court is instructed to enter **FINAL JUDGMENT in the amount of $43,083,720** in equitable monetary relief in favor of the FTC and **against Individual Defendants Christopher Sunyich, Melissa Sunyich Gardner, Michael Sunyich, and Steven Sunyich; and Corporate Defendants Ascot Crossing, LLC; Avanix, LLC; Bracknell Shore, Ltd.; Chandon Group, Inc.; Fiscal Fitness, LLC; and Ideal Financial Solutions, Inc., jointly and severally**. This sum represents the net consumer-loss amount resulting from defendants' violations of the FTC Act.

2.  The Clerk of Court is instructed to enter **FINAL JUDGMENT in the amount of $36,575,542** in equitable monetary relief in favor of the FTC and against defendant Jared Mosher, who is jointly and severally liable with the other defendants.  This sum represents the net consumer-loss amount resulting from Mosher's violations of the FTC Act in concert with the other Defendants.

3.  This judgment against the defendants will be reduced by funds turned over to the FTC by the Receiver, but all taxes and fees assessed against the defendants or Receiver from the sale or transfer of assets will not reduce the amount of the judgment.

4.  All funds paid to the FTC under this section must be deposited into a fund administered by the FTC or its designee to be used for equitable relief.  Any money not used for equitable relief must be deposited to the U.S. Treasury as disgorgement. Defendants have no right to challenge any actions taken by the FTC under this subsection.

5.  Defendants must submit their taxpayer identification numbers to the FTC within 10 days of this order, and these numbers may be used for collecting and reporting on any delinquent amount arising out of this order, in accordance with 31 U.S.C. § 7701.

**V.   Lifting the asset freeze**

The freeze against defendants' assets under the temporary restraining order entered on January 30, 2013,[83] by the preliminary injunction entered on February 15, 2013,[84] and by the preliminary injunction entered on May 10, 2013,[85] is lifted for the sole purpose of transferring assets as provided in this order, and will dissolve once the transfer has been completed.

---

[83] ECF 10.

[84] ECF 18.

[85] ECF 49.

**VI.    Receivership wrap up and termination**

The Receiver must complete all duties within 180 days of this order, but any party or the Receiver may request an extension or shortening of the Receiver's term for good cause.  The Receiver may petition the court for reasonable compensation from the receivership estate for performance of his duties and for costs.

**VII.    Retention of jurisdiction**

This court retains jurisdiction over this matter for construction, modification, and enforcement of this order.

**The Clerk of Court is instructed to enter final judgment consistent with this order and Close this Case.**

DATED February 23, 2016

_____
Jennifer A. Dorsey
United States District Judge